## JOHNS v. CHARLOTTE, &c., RAILROAD COMPANY.[1]

1. NEGLIGENCE—DAMAGES—EVIDENCE.—In action by plaintiff to recover dam-
   ages for injuries received through defendant's negligence, it was not error
   to permit plaintiff to testify as to his family, their number, ages, and sex,
   the inquiry not being further pressed, and the law of punitive damages
   being charged.
2. EXCEPTION taken after adjournment of court to a ruling on trial, overruling
   objection to testimony, considered, though not excepted to at the time.
3. EVIDENCE—INJURY—LIKE DEFECTS.—The engineer who built the trestle at
   which the injury complained of occurred, may testify as to the time and
   manner of its construction, and give a description of it, and of surround-
   ing structures and topography.  MR. CHIEF JUSTICE McIVER *dissenting*.
4. RAILROADS—NEGLIGENCE—STATIONS—PASSENGERS.—A person desirous of
   taking a railroad train walked towards the depot in the night time by a
   proper approach, just before the schedule hour, sending his servant in

_____
[1] With the above case in 20 L. R. A., 520, is published a note reviewing the
numerous cases which touch the measure of care which a carrier must exercise
to keep its platforms and approaches safe.—REPORTER.

advance to buy a ticket, and the way being unlighted, he stepped between the ties of a trestle, where it commenced on the railroad property, and he was injured. In action brought to recover damages for this injury, the trial judge did not err in charging the jury that the railroad company was held to the exercise of extraordinary care towards those who had made a contract of carriage, and, also, in providing safe approaches for those who came to their depot to take carriage as passengers. MR. JUSTICE POPE concurred under the facts of this case, and MR. CHIEF JUSTICE MCIVER dissented.

Before KERSHAW, J., Chester, March, 1891.

Action by William E. Johns against the Charlotte, Columbia and Augusta Railroad, commenced February 5, 1890. It was heard on appeal in this court on December 2, 1891, before the two justices then in commission, and a reargument having been ordered, it was heard before the full bench on January 18, 1893.

Thomas Bernard, being on the stand as a witness for plaintiff, proved that an old depot had been taken down and a new one built about 150 feet distant. Alluding to the old depot, he was asked:

"Q. Was there any hole where it had been? A. Yes, sir; there was.

Q. How deep was that hole? A. I suppose, some three feet, and sloped down to the trestle.

Mr. Abney (defendant's counsel) objected, on the ground that the accident occurred in 1889, and the plaintiff is proving occurrances in 1883.

The Court: I think it is competent to prove the condition of the *locus.* If he shows the condition of affairs then, it must be shown that they have been changed since. (Defendant's counsel excepts.)

Q. You say you filled up that hole? A. I didn't say so, but we did.    *  *  *

Q. How did that hole come there, do you know? No, sir, I do not.

Q. Was there any other building on top of that? A. No, sir; no other building there.

Q. Have you any idea how long that place has been there?

Mr. Abney objects to this testimony, upon the ground that it does not belong to the *locus*, but to the condition of affairs at a different place. The Court: I think it is competent to show other holes that the man did not fall into in that locality. (Defendant's counsel excepts.)

Q. Well, sir, after you got rid of the old depot and filled up the hole that is next to the sidewalk, what did you next do? A. I filled up all next to the C., C. & A. R. R., and made a dirt platform, &c."

Under the judge's charge, the jury found a verdict for plaintiff, and the defendant appealed. The exceptions taken and not abandoned are stated in the argument for appellant. The following is a diagram of the place of injury:

A B—Defendant's road.
C—Place of accident.
D—Present depot.
E—Platform.
F G—Narrow Gauge R. R.
H—Hotel.
S—Street.

*Mr. B. L. Abney*, for appellant.

Exception 3 to the rulings, charges error on the part of the presiding judge in allowing the plaintiff to testify, over the objection of the defendant, how many people he had to care for, and of whom they consisted. This was error, 85 Tenn., 465; 74 Ill., 343; 2 Sedg. Dam., §490; 4 Am. R. & Corp. Rep., 239; 102 U. S., 451.

Exception 4 to rulings. The presiding judge erred in allowing the witness, Thomas Bernard, to testify, over the objection of the defendant, as to the *locus* and occurrences, with

reference thereto, long prior to the accident to the plaintiff; and also to the condition of affairs at other and different places on defendant's platforms and tracks other than where the accident occurred. Black P. & P. in Acc. Cases, § 45; 69 Maine, 173; 17 A. & E. R. R. Cas., 132; 30 *Id.*, 642; 31 *Id.*, 183, 233; 34 *Id.*, 399; 44 *Id.*, 313; 13 S. E. Rep., 209.

Exceptions 1, 4 and 6 to the charge were as follows:

1. Excepts because the presiding judge erred in charging the jury as follows: "Now, in this contention, I charge you that, in regard to passengers, the railroad company is to be held to extraordinary care, extraordinary care providing for the safety of passengers. * * * That the relation of a passenger to the company would commence certainly from the purchase of the ticket, with the immediate purpose of taking the cars as soon as they were ready on the track. It has been argued on one side that the evidence shows that their tickets had been procured by the hotel porter, whom they had made their agent, and claim that they were passengers; but I think this extraordinary care would be required by the railroad authorities as to any person who was going in the proper way, by any proper approach, to take the cars, or to purchase a ticket; or to get his baggage checked; if he got on the property of the railroad, that he had the right to find everything that was necessary for the railroad to have done to secure his safety."

"4. Excepts because the presiding judge erred in charging the plaintiff's second request to charge, which was as follows: That it must be properly lighted when its trains come and go in the night time, and be constructed and arranged with great care, and in case of passengers who are about to take the train and to pay their passage, or who have actually paid the same, extraordinary diligence is required of the company."

"6. Excepts because the presiding judge erred in charging the plaintiff's fourth request to charge, which was as follows: That in case of a passenger who actually pays for his ticket, the contract of common carrier commences from that instant, and it is incumbent upon such carrier to show extraordinary diligence to provide a perfectly safe approach to its trains."

The defendant requested the presiding judge to charge the

jury, but which he refused to do: "that in regard to the keep-
ing of its platforms, grounds and approaches to its tracks, the
defendant is not required to use extraordinary care and caution,
but the measure of its duty is only ordinary care and prudence,
and if the jury believe from the testimony that the defendant,
in respect to keeping and maintaining the trestleway and plat-
form in the condition that they were at the time of the accident
to the plaintiff, exercised ordinary care and prudence, it is not
liable, and the jury should so find." *Exception 2 of the refusals
to charge.*

When the agencies used by the carrier are no more dangerous
than those used by the individual, there can be no reason why
it should be required to exercise greater care than the citizen.
Thomp. Car. Pass., 104, 209, 214, 242; Sh. & Redf. Negl.,
§§ 495, 501; 20 S. C., 222; 112 N. Y., 450; 106 *Id.*, 136; 51 *Id.*,
501; 141 Mass., 31; 104 Ind., 239; 80 *Id.*, 168; 18 Ohio St., 255;
Hutch. Carr. (2d edit.), § 521a; 50 Fed. Rep., 755.

*Mr. S. P. Hamilton,* contra.

April 18, 1893.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN.   This was an action to recover
damages for personal injuries received by the plaintiff, a trav-
eling salesman, on 30th of November, 1889, at Chester, S. C.,
while he was approaching at night the passenger depot of the
Charlotte, Columbia and Augusta Railroad, by stepping into
an open trestle on the main line of the Chester and Lenoir
Narrow Gauge Railroad.   There is no "Case stated," but a
plat is attached to the record which describes the premises.
Counsel for the appellant states the facts as follows: "It seems
that some time prior to 1883, the Chester and Lenoir Narrow
Gauge Railroad Company had built a railroad from Chester to
some point north of that place.   Its line of road ran east of
that of the Charlotte, Columbia and Augusta Railroad, and
parallel thereto, until it crossed the street in front of Nichol-
son's Hotel.   It does not clearly appear how the track of the
Narrow Gauge Road was built along this line, and whether it
obtained its right of way by condemnation, grant or license.
It does appear, however, that the Charlotte, Columbia and

Augusta Railroad Company operated the Narrow Gauge Railroad in 1883, and that a trestle was made from the street to a point north of the depot. The statutory right of way of the C., C. & A. R. R. is sixty-five feet from the centre of the track each way, and that this trestle is within this right of way. Under what arrangements and proceedings this trestle and line of track was put within or on the sixty-five feet right of way, does not appear. The defendant company ceased to operate, or to have anything to do with or to control, the C. & L. R. R. after the first of May, 1886. The trestle was on the main line of the C. & L. Railroad. From 1886 to and at the time of the accident, the Richmond and Danville Railroad Company managed and controlled this road under a lease.

"At the time this trestle was built, the passenger depot of the defendant company was located near the street, and the rear of it abutted against the trestle. Subsequently the passenger depot of the C., C. & A. R. R. Company was removed to its present location. After this was done, the Richmond and Danville Railroad Company built along the trestle a plankway, which is from four to ten feet deep along its whole length, and about ten inches between each crosstie." This plankway or platform was put there, as stated by one of the witnesses, 'in order to combine the depot for the use of the two railroads.'

"On the morning of November 30th, 1889, the plaintiff, about 3 o'clock a. m., and his companion, Mr. Murphy, were awakened by the hotel porter, for the purpose of taking the train on the railroad of the defendant company. It seems that they did not have time themselves to get ready and purchase their tickets, and they sent the porter out in advance to purchase them. After they had dressed, they proceeded to the train themselves; they passed out of the hotel, down the steps and advanced towards the city lamps in the street on or across the track of the C. & L. Narrow Gauge, instead of proceeding forward to the C., C. & A. Railroad, and going down to the place where passengers are received on trains on that road. They observed a light shining out of a window in the passenger depot, and started across the platform to reach the place where the cars were usually stopped. Instead, however, of going over

the plankway, they advanced to the head of the trestle, and plaintiff stepped in between the first and second crossties, and was injured," &c. It does not appear whether the porter, who had gone in advance, had purchased the plaintiff's passenger ticket at the moment that he fell into the open trestle and was injured. He complains that he was very seriously injured in his foot and ankle, "caused by the gross negligence of the defendant company in allowing the said open and dangerous trestle to remain unguarded in the way of passengers going or returning from its passenger trains, in not keeping lights near said trestle, and in not providing a safe approach in that direction to its station, where passengers alight from and get on said train."

Under the charge of the judge, and after they, in charge of an officer, had inspected the locality where the injury was received, the jury found a verdict of $1,300 for the plaintiff, upon which judgment was entered; from which the defendant company now appeals to this court upon various grounds, embracing alleged errors of rulings at the trial, in granting certain requests to charge and in refusing others. The requests especially are long, and as they are all printed in the brief, they need not be here stated again.

Exceptions 1 and 2 [to the rulings] were withdrawn at the trial by the appellant. Exception 3 alleged error in the ruling of the judge, "in allowing the plaintiff to testify, over the objection of the defendant, how many people he had to care for, and of whom they consisted." If the testimony had gone further in the line indicated, it might have become error; but as it stopped simply at the number and character of his family, we think it was wholly immaterial and could not affect the result, especially as the judge charged as follows: "Now in a case where the railroad company was guilty of any gross and reckless disregard of the lives and persons of people, juries are allowed to give what you call punitive damages—go beyond actual damages and give damages by way of punishment. Gentlemen, while that is a matter for you, I charge you that it is not proper, unless in a clear case of wilful, palpable disregard of their duty, to apply that degree

of responsibility," &c.   See *McLaurin* v. *Wilson*, 16 S. C., 412; *Thompson* v. *Brannan*, 14 *Id.*, 543.

Exception 4 complains of error on the part of the judge, "in allowing the witness Bernard to testify, over the objection of the defendant, as to the *locus* and occurrences with reference thereto long prior to the accident to the plaintiff, and also to the condition of affairs at other and different places on defendant's platform and track than where the accident occurred," &c.

It seems that when the testimony of this witness was offered, objection was made, but overruled; that no exception was noted at the time, and the plaintiff, under the authority of *Thompson* v. *Brannan*, 14 S. C., 542, now objects that, the appellant having acquiesced, can not renew the matter in this court.   But as the objection was included in the written exceptions, we will consider it.   The witness Thomas Bernard was the engineer under whose direction the trestle so often spoken of was built, and, as it seems to us, was the very person best calculated to inform the court when the trestle extending the Narrow Gauge track was built on the right of way of the C., C. & A. Company—for what purpose it was built, and by whom—and also as to when the new depot of the C., C. & A. Company was erected, and for what purpose the plankway or platform was laid along that open trestle. We have read the testimony of the witness carefully, and we must say that we agree with the Circuit Judge, that the testimony was entirely relevant to the issues and unobjectionable.

That brings us to what the parties consider the main question in the case, and that is as to what degree of care is required of railroad carriers in making and keeping up safe approaches to their passenger depots.   The judge charged as follows: "It is contended for the plaintiff that extraordinary care is required, that more than ordinary care is required under the circumstances.   On the other hand, on the part of the defendant company, it is said that the railroad company, under the peculiar circumstances of this case, were not required to exercise anything more than ordinary care and prudence, such care as would be required by your own town council, in keeping dangerous objects off the streets, and such

care as would be required by a private person, not to allow any dangerous objects to stand in the way of ingress to his house, where people were invited—that is, such care as a man of ordinary prudence would exercise. Now, in this contention, I charge you that, in regard to passengers, the railroad company is to be held to extraordinary care—extraordinary care providing for the safety of passengers."

Was this error of law? As a general rule, it certainly was not. It is so well established that the citation of authorities is entirely unnecessary. But when does that responsibility on the part of the railroad company arise? It is contended in behalf of the company that this extraordinary liability is imposed upon a railroad carrier of passengers for the reason that the operation of engines and cars by the power of steam is dangerous, and, therefore, can not commence until the passenger has purchased his ticket and taken his seat in a coach to be transported; for up to that moment, as contended, he is in no peculiar danger, and, therefore, he is entitled to nothing more than ordinary care; that the carrier's liability in respect of the condition of his premises, approaches and platforms is neither greater nor less than that of one person to another, who, by invitation or inducement, express or implied, has come upon his premises for the purpose of transacting business. Some cases were cited, which seemed to recognize the distinction indicated, but we think that it is not well founded—that it would be impossible to maintain such an arbitrary and shadowy line, and that the great weight of authority is against it—holding that the liability of the carrier arises as soon as there is a contract of carriage between the parties. The judge left it to the jury to determine whether the plaintiff's ticket had been purchased at the moment he received his injury; and we might assume from their verdict that it had been so purchased. "The relation of carrier and passenger begins when, a contract of carriage having been made, or the passenger having been accepted as such by the carrier, he has come upon the carrier's premises or has entered upon any means of conveyance provided by the carrier," &c. "If a person has the *bona fide* intention of taking passage by a train, and if he goes to a station at a rea-

sonable time, he is entitled to protection as a passenger, not
only from the moment he enters upon the carrier's premises,
but also while *en route* to the station in an omnibus run by the
railway to take passengers to their trains." 2 Am. & Eng.
Enc. Law, 744, and notes.

But, according to the judge's charge, it was immaterial
whether the ticket had or had not been purchased at the mo-
ment the injury was received. The judge said: "There has
been some contention between these parties as to whether these
parties were 'passengers' or not. That is a question of fact for
you. Mr. Abney for the defence argued that the relation of
passenger and carrier had not been established at the time this
accident occurred; that these parties were not in the actual
custody and care of the defendant company at the time the
accident happened. Well, in regard to that, I will say this:
That the relation of a passenger to the company would com-
mence certainly from the purchase of the ticket, with the
immediate purpose of taking the cars as soon as they were
ready on the track. It has been argued on one side, that the
evidence shows that their tickets had been procured by the
hotel porter, whom they made their agent, and claim that they
were passengers; but I think this extraordinary care would be
required of the railroad authorities as to any person who was
going in the proper way, by any proper approach, to take the
cars or to purchase a ticket, or to get his baggage checked; that
if he got on the property of the railroad, that he had the right
to find everything that was necessary for the railroad to have
done to secure his safety," &c.

It seems to us that this was not error, but in exact conform-
ity to the doctrine of the elementary writers as well as of the
decided cases. "A carrier is liable for negligence in its con-
struction or maintenance in repair of its station approaches,
station buildings, * * * and station platforms." Pierce
on Railroads, 275, 276, and notes. "A carrier is also liable for
a failure to adequately light its stations and platforms, and for
negligent obstructions on station platforms," &c. 2 Am. &
Eng. Enc. Law, title "Carriers," page 760, and notes, espe-
cially note 4. See the charge of Maule, J., to the jury, as

reported in *Martin* v. *G. N. R. R. Co.*, 16 C. B. (81 E. C. L.), 179, and, also, the judgment of Dillon, Justice, in *McDonald* v. *C. & N. W. R. R. Co.*, 26 Iowa, 124, and the note of Judge Redfield to the last cited case in 2d Redfield Railroad Cases, 532.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE POPE. I shall not undertake to state anew the facts upon which this contention is based. The opinions of the senior members of this court have already set them forth clearly and distinctly. I would content myself with a general concurrence in the opinion of Mr. Justice McGowan, if it were not the fact, that, in my judgment, it should be considered as applying to the facts of this case, and not, as a general rule, applicable to all sets of cases where accidents occur by reason of defective approaches to stations at which passengers board railroad trains for passage thereon. In my judgment, railroad companies should not be held responsible for extraordinary care in making and keeping in repair such approaches to stations for passengers, except in those instances where bridges or trestles on their property are used as a part of such approaches which such railroads use in the approaches to such stations. and over which they invite passengers to enter their property for the purpose of taking passage in their cars. In the case at bar, it is admitted that the railroad company in question invited persons wishing passage in its cars, by day and by night, to reach their cars to embark thereon, by crossing a trestle ten feet high, with a flooring upon such trestle so open that the plaintiff fell through the same, thereby inflicting serious wounds and bruises. Using this trestle as a bridge, the railroad company, in my judgment, were required to exercise extraordinary care to prevent injuries. This was not done. The flooring was not only not close, but no lamps were lighted. They should respond in damages for such negligence.

With these restrictions upon the application of the doctrine of extraordinary care, I concur in the opinion of Mr. Justice McGowan.

MR. CHIEF JUSTICE McIVER. Being unable to concur in

the opinion prepared by Mr. Justice McGowan, I will proceed to state, very briefly, the grounds of my dissent.

In the first place, I think it was error to overrule the objection to so much of the testimony of the witness Bernard as tended to show negligence on the part of the defendant company at other times and places than the time and place where the disaster which was the subject of inquiry occurred. The issue which the jury were called upon to try, was whether the injury of which the plaintiff complained was caused by defendant's negligence, and testimony as to the defendant's negligence at other times and places was not only not pertinent to that issue, but was calculated to prejudice and mislead the jury.

My main ground of dissent, however, is as to the rule laid down by the Circuit Judge in regard to the degree of care required of a railroad company as a carrier of passengers in a case like this. It is quite true, that a railroad company is bound to exercise the highest degree of care in the transportation of a passenger after such transportation has commenced; but this rule is founded upon considerations of public policy, and the reason for it is that, as the agencies used for the purpose are of a dangerous character, which are under the control of the carrier and not the passenger, the carrier is held to the highest degree of care in transporting the passenger—the danger being much greater after the transportation has actually commenced than before, it is but reasonable that greater care should be required, so as to avoid, if possible, such increased dangers. Hence, a railroad company employing the powerful agency of steam for the movement of its cars, over a roadbed specially constructed for the purpose, at a high rate of speed, is held, and properly held, to the greatest skill, care and diligence in the construction and management of the various appliances used in the process of transportation of passengers, because of the great danger to human life from any negligence in conducting such a hazardous mode of transportation.

But when the reason for this extreme rule, wisely established for the protection of human life, is not present, then the rule

is and ought to be relaxed, and the same rule which is applied to other persons in like circumstances is applicable to railroad companies. Under that rule, while a person who invites or induces others, either expressly or impliedly, to enter upon his premises for the purpose of business, is bound to keep his premises, as well as the approaches thereto, in a reasonably safe condition, yet he is not held to the highest degree, but only to ordinary care, in the performance of such duty; and I am unable to see why a railroad company should be held to any more stringent rule. When, therefore, a person brings an action against a railroad company to recover damages for an injury sustained by some alleged defect in the approaches to its cars, the question is not whether the company has exercised the highest degree of care in making such approaches absolutely safe, but is simply, as in other like cases against individuals or corporations, whether the railroad company has exercised ordinary care in providing reasonably safe approaches to its cars. Under this view, it seems to me that the question whether the plaintiff had, through his agent, the hotel porter, actually obtained his ticket when the accident occurred, was wholly unimportant, for it is not pretended that the plaintiff had committed his person to the railroad company for transportation, when alone he would be subjected to the peculiar dangers incident to railroad transportation, and when alone the duty of exercising the highest degree of care would commence. These views are fully supported by the authorities cited in appellant's argument; and, as it seems to me, are the legitimate deduction from what was said by this court in *Renneker* v. *South Carolina Railway Company*, 20 S. C., at page 222.

My conclusion, therefore, is, as at present advised, that the judgment of the Circuit Court should be reversed and a new trial granted.

Judgment affirmed.