### CAIN v. ATLANTIC COAST LINE R. R. CO.

1. EVIDENCE—TRANSACTIONS WITH DECEDENT—RES GESTAE.—DECLARATIONS of conductor while taking up tickets immediately before a wreck, and who was killed in the wreck, are a part of the *res gestae* and not excluded by Sec. 400 of Code.

2. IBID.—REPLY.—After evidence that a plaintiff while in hospital had received a sum of money from defendant in compensation for injuries, it is competent in reply to show he was unconscious while in hospital, how much money he had when he went in and how much he had when he came out.

3. IBID.—OPINION of a person living in vicinity of an embankment who had never particularly noticed it until after it was washed out, as to its nature and safety, is not admissible in absence of proof tending to show he had some expert knowledge as to the requisite width of embankments and resisting power of materials.

4. IBID.—RAILROADS.—On cross-examination of employee of a railroad who was injured in a wreck, he may be asked in suit for injury to another in same wreck, how much the company had paid him for his injuries, to test his credibilty and fairness.

MR. JUSTICE WOODS *thinks the question harmless because the witness denied receiving anything from the company.*

5. A RAILROAD COMPANY in the construction of its roadbed is bound to use the highest degree of skill and care as incident to traffic, as an incident to the protection of passengers, and to provide against any contingency that may reasonably be expected to happen.

6. NONSUIT—VERDICT.—Failure to prove one of several acts of negligence alleged in a complaint does not furnish ground for nonsuit or for direction of verdict for defendant.

7. APPEAL—NEW TRIAL.—This Court cannot relieve against a refusal to grant a new trial on ground that the evidence was overwhelming in favor of losing party and insufficient to sustain the verdict.

8. VERDICT—NEW TRIAL.—There being no evidence to support objection that verdict was a quotient one, refusal of motion for new trial on that ground will not be reviewed.

Before PURDY, J., Sumter, July Term, 1905. Affirmed.

Action by Alexander L. Cain against Atlantic Coast Line Railroad Co. From judgment for plaintiff, defendant appeals.

*Messrs. P. A. Willcox* and *Mark Reynolds,* for appellant. *Mr. Willcox* cites: *Declarations of agent only bind the principal when descriptive of the particular point as to which he was acting:* 56 S. C., 136; 53 S. C., 448; 58 S. C., 70. *Witness may give opinion after stating the facts:* 19 S. C., 70. *Proof must correspond with allegations:* Cheves, 9; 1 N. & McC., 589; 4 Rich., 296; Pom. Code Rem., sec. 553; 14 Ency. P. & P., 342.

*Messrs. Lee & Moise,* contra, cite: *Declarations of conductor were part of res gestae:* 25 S. C., 138. *Cross-examination of employee as to payment for injuries is admissible to test his credibility:* 65 S. C., 247. *Duty of carrier to passenger:* 9 Rich., 93; 39 S. C., 162. *Not necessary to prove all acts of negligence alleged:* 35 S. C., 381; 72 S. C., 137; Code of Proc., 186a; 6 S. C., 139. *Refusal of motion for new trial is error of law only where there is no evidence to support verdict:* 44 S. C., 339; 60 S. C., 498; 49 S. C.,

454; 52 S. C., 371; 57 S. C., 280. *As to quotient verdicts:* 68 S. C., 896.

April 12, 1906. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. The plaintiff by his complaint sought to recover from the defendant railway the sum of $1,999 for the injuries he alleged that he had received by a wreck of the defendant's passenger train on the morning of the 3d day of June, 1903, on which the plaintiff was a passenger. The defendant admitted that its railway train was wrecked on that day, but it alleged that said wreck occurred at a point on the track of the defendant which was perfectly safe for more than thirty-five years and which track was displaced by an extraordinary fall of rain on the night of the 2d and 3d days of June, 1903, and was the act of God.

The action came on for trial at the July, 1905, term of Court of Common Pleas for Sumter County, before his Honor, Judge Purdy, and a jury. The testimony of both sides occupied days in its presentation. Indeed the contest was one of the most stubborn and hotly contested character. Full argument was heard on both sides, and after a charge from the Judge, the jury brought in a verdict in favor of the plaintiff for $570.83.

The defendant moved for a new trial upon the minutes of the Court. This motion was refused. Thereupon the defendant appealed upon nine grounds, which we will now consider in their order:

The first ground was as follows: "Because his Honor erred in allowing the plaintiff Alexander L. Cain, while on the stand, to testify, over the objection of the defendant, as to a conversation which took place two years previous, between the conductor of the defendant's train, who was then dead, and the plaintiff, to wit: 'He says he must take up the tickets and see about the engineer; he, the engineer, was running the train too fast.'

The said testimony being an alleged conversation and declaration made by the dead conductor two years previous, and was incompetent under section 400 of the Code, and could not bind the defendant; and there was no way in which the defendant could prove the statement to be false as the conductor was dead."

It seems from the testimony of this witness, A. L. Cain, who was not yet twenty-one years of age and who sued by his guardian *ad litem,* that while the conductor, who was afterwards killed in the same wreck, was taking up the ticket of this plaintiff, he heard the conductor say, "I must take up the tickets and see the engineer, who is running the train too fast." There was testimony that the rate of speed was considerable and the engineer did not take on other passengers, although he admitted he was signalled to do so. The train was an excursion. So the defendant objected to the testimony by the plaintiff on the ground that such testimony was a violation of sec. 400 of our Code of Procedure, in that the conductor whose language was being stated by the witness was dead. It must be remembered always that section 399 of our Code provides that no person shall be excluded as a witness by reason of his interest in the event of the action. So that if a witness otherwise competent is to be excluded, it must be under this section 400. It is as follows: "A party to an action * * * in all Courts of this State * * * may be examined as a witness in his own behalf * * * in the same manner and subject to the same rules of examination as any other witness: *Provided,* however, That no party to the action * * * shall be examined in regard to any transaction or communication between such witness and a person at the time of such examination deceased, insane or lunatic, as a witness against a party then prosecuting or defending the action as executor, administrator, heir at law, next of kin, assignee, legatee, devisee, or survivor of such deceased person, or as assignee or committee of such insane person or lunatic when such examination, or any judgment or deter-

mination in such action .* * * . can in any manner affect the interest of such witness or the interest previously owned or represenetd by him * * *." A careful exam-ination of the provisions of this section 400 of the Code and a consideration of the testimony of this witness fails to show to us that the ruling of the Circuit Judge was erro-neous. The many decisions of this Court on this subject are full and explicit and need no further elaboration at our hands. See. *Norris* v. *Clinkscales,* 47 S. C., 490, 491, 492, 493, 494. This exception is overruled.

We will next examine the second exception, which is as follows: "Because his Honor erred in allowing the plaintiff, A. L. Cain, over the objection of the defend-ant, to testify as to show how much money he had when the wreck occurred, and as to how much cash he had when he got out of the hospital; whereas, there was no loss of money alleged in his complaint and no suit for the recov-ery of the money lost, and said testimony was irrelevant."

There was testimony offered to show that the plaintiff received the sum of $16 from an agent of the defendant. The plaintiff denied that he received such sum, and said that when he was discharged from the hospital where he had been placed by the defendant, he had no money. These facts being in dispute, the testimony was relevant. But apart from this, no possible injury could have resulted to the defendant, for the plaintiff offered to pay back this sum of $16 to the defendant and actually tendered the money to defendant. This exception is overruled.

We will now examine the third exception, which is as follows: "Because his Honor erred in not allowing W. J. Rees, witness for the defendant, to state what his opinion was as to nature and safety of "an embank-ment sixty feet wide, built of clay and sand, twelve to fifteen feet high," when it was shown that Mr. Rees was a resident of that vicinity, and was well acquainted with the embankment in question, the dimensions and char-acter of the embankment being in question; whereas, his

Honor should have allowed the defendant to have the advantage of his statement in answer to the question."

It is true, opinions of witnesses are sometimes allowed in certain conditions as to injuries to women's characters—*Jones* v. *Fuller,* 19 S. C., 66; *Ward* v. *Charleston City Railway Co.,* 19 S. C., 521. But the rule is that opinions of witnesses, except an expert's, is not competent. So we think in the case at bar the evidence of the witness Rees as to his opinions was not competent. This exception is overruled.

The fourth exception is as follows: "Because his Honor permitted, over the objection of the defendant, the plaintiff's counsel to question the engineer, G. A. Wilson; and allowed the witness to testify as to what amount of money the defendant had paid him for injuries sustained by him in the said wreck; whereas, the said testimony was wholly irrelevant to the issue then under investigation." This testimony was sought on the cross-examination of defendant's witness. Under the wise oversight of the presiding Judge such cross-examination was perfectly competent. The fairness of the witness may thus be tested; his credibility, etc., may be tested in this way. This exception is overruled. .

The next exception, the fifth, is as follows: "Because his Honor, the presiding Judge, erred in charging in modifying the defendant's first request to charge that 'The railroad company in the construction of its roadbed is bound to use the highest degree of skill and care as an incident to traffic;' whereas, the said request to charge was a correct proposition of law, applicable to the case, and should not have been modified as it was by his Honor."

Now the request to charge as made by the defendant was in these words: "A railroad company is required to so construct its roadbed and track as to avoid such dangers as could be reasonably foreseen by competent and skillful engineers; might be occasioned from the ordinary rainfalls and freshets incident to the particular section of the country

through which it is constructed.  But it would not be guilty of such culpable negligence as to make it liable in damages if it failed to provide against such extraordinary floods or other inevitable casualties caused by some hidden force of nature unknown to common experience and which could not have been reasonably anticipated by the ordinary engineering skill and experience required in the prudent construction of such railroad."  Now here is what the Circuit Judge said in regard thereto: "I charge you that, gentlemen, *with this addition.*  I am not sure whether the qualifying part of this embraces it and I will add this for that reason.  The railroad company in the construction of its roadbed is bound to use the highest degree of skill and care as an incident to traffic, as an incident to the protection of passengers, and to provide against any contingency that might reasonably be expected to happen.  In other words, such a contingency as the reason of man would dictate would or might happen. That is the rule as I understand it, and in that sense I charge it."

To see how thoroughly the Circuit Judge in his charge protected the defense of the defendant, it will be seen therein that he charged the second, third and fourth requests of defendant as follows: " '2. If an accident should happen from such cause—that is to say, from some hidden force of nature unknown to common experience and which could not have been reasonably anticipated by the ordinary engineering skill and experience required in the prudent construction of such roadbed?' and I will add, by the exercise of the highest degree of skill and care on the part of the railroad company.  If an accident should happen from such cause on a roadbed and track which had been properly constructed and kept in good repair, when the agents and employees in charge of the train were in the due exercise of that degree of caution and prudence necessary at all times, and when they did not have from any information conveyed to them, or from their personal observation, reasonable ground to anticipate impending danger and conse-

quently did not use such extraordinary precautions as might otherwise have averted it, then the law characterizes it as an act of God, or such inevitable accident as is incident to all human works, and which would relieve the company from liability. I so charge you. If there be any act which could not be controlled by human agency in the sense I will further charge you from this, and in which no human agency took part, the railroad company was free from negligence and the injury resulted as a result of that hidden force, then the railroad company would not be liable.

" '3. If an injury is caused by an unprecedented rainfall, such as ordinary human foresight and prudence could not foresee, such injury is caused by an act of God, for which the railroad is not to be held responsible—such act of God being the sole cause, without any negligence on the part of the carrier co-operating to bring it about.' I had overlooked the fact that that request was in that shape. That is just what I have told you, and I so charge you.

" '4. Where an act of God causes an injury to property and passengers in the hands of a common carrier, and such act is the sole cause of the injury, then the proof of this fact is a perfect shield. But if there be any negligence on the part of the carrier, which, if it had not been present the injury would not have happened, notwithstanding the act of God, the carrier cannot escape responsibility, and the *onus* is upon the carrier to show not only that the act of God was the cause, but that it was the entire cause, because it is only when the act of God is the entire cause that the carrier can be shielded.' Now, gentlemen, here is the definition of an act of God: 'An act of God means inevitable accident, without the intervention of man and the public enemies.' "

We do not see that the Circuit Judge committed any error here. This exception is overruled.

The sixth exception was as follows: "Because his Honor erred in refusing the defendant's tenth request to charge, that

it was incumbent upon the plaintiff to make out each and every allegation of negligence charged in the complaint. This the plaintiff had failed to do, in that there was no testimony to support the following allegation of the complaint: 'In that formerly a culvert, trestle or water drain existed at the place aforesaid, whereby water was permitted to escape through and under said railroad track without injury to the same, but that the said defendant had filled up the same by said earthen embankment, and had maintained the same in such condition, and thereby prevented the escape of said water through or under said roadbed, by reason whereof said roadbed was undermined and washed away and said engine, tender and train of cars broke and fell through the same as aforesaid, and but for which, said wreck would not have occurred.' " There was some testimony tending to show that material like a box was seen by one of defendant's witnesses in the embankment, and therefore these matters were for the jury and there was no error in the refusal of the Circuit Judge to charge as requested. This exception is overruled.

We will next notice the seventh exception, which was as follows: "Because his Honor refused to direct a verdict in view of the form of the complaint, the complaint having charged a number of specifications of negligence but for which negligence the wreck would not have occurred, the verdict should have been directed for the defendant company." The same reason advanced in regard to the sixth exception applies here. The Circuit Judge properly left it to the jury. This exception is overruled.

The eighth exception was as follows: "Because his Honor committed error of law in refusing defendant's motion for a new trial on the ground of insufficient evidence to sustain the verdict, the evidence being overwhelmingly in favor of the defendant company; whereas, he should have granted the new trial prayed for." We do not think the Circuit Judge committed any error as here pointed out. While the Circuit Judge might have reached a dif-

7—74

ferent conclusion from that of the jury, still they are the ·triers of fact in Courts of law. This exception must be overruled.

We will now pass upon the last, the ninth, exception, which was as follows: "Because his Honor erred in

8      not setting aside the verdict on the ground of its being a quotient verdict not responsive to the testimony—null and void." We see no evidence in the case for appeal that the jury rendered what is known as a quotient verdict. A Circuit Judge is not required to assume facts. Besides the testimony was full on both sides. The defendant had the greatest number of witnesses, but juries are not governed by numbers necessarily. Certainly a Circuit Judge does not err when a jury acts upon its best judgment. Cases must come to an end at some time or other.

It is the judgment of this Court, that the judgment of the Circuit Court be and it is hereby affirmed.

Messrs. Justices Gary and Jones *concur in the result.*

Mr. Justice Woods, *concurring.* Alexander L. Cain, claiming to be a minor, brings this action by Joseph Cain, his guardian *ad litem,* to recover damages for personal injuries received as a passenger on defendant's train. The complaint sets out that on June 3, 1903, the train on which plaintiff was a passenger ran into a washout near Wedgefield, S. C., and that the resulting wreck and the injury to the plaintiff was due to the negligence of the defendant in that, (1) an embankment supporting defendant's roadbed was insecure and dangerous in several particulars, and although the defendant knew of the defects and also knew that a very unusually heavy rain had fallen the preceding night, in consequence of which a large volume of water had accumulated against the weak embankment, the defendant nevertheless undertook to run the train which was wrecked over the point of weakness without the inspection by the

section master required by the rules of the company, and (2) the engineer and fireman failed and refused to stop the train on signals warning them that the embankment had been washed away.

In addition to a general denial, the defendant alleged that the wreck was an unavoidable accident due entirely to an unprecedented rainfall, coming as an act of God, which defendant could not possibly anticipate or guard against. As a further defense the defendant alleged a release from plaintiff to defendant from all liability for the consideration of $16. From a judgment in favor of the plaintiff, defendant appeals.

In the first exception, error is charged in allowing the plaintiff to testify in this language as to a remark made by the conductor: "He says he must take up tickets and see about the engineer, he was carrying the train too fast. That's all. And as I handed my ticket to him the accident occurred just at the time. I don't know when I drew my hand back as much." This all manifestly occurred almost at the very moment of the accident; the conductor was the representative of the defendant (*Boatwright v. R. R. Co.,* 25 S. C., 132), and was speaking of the control and conduct of the train in his charge. His remarks were clearly a part of the *res gestae,* for they were "the spontaneous utterances of the mind under the immediate influence of the transaction." *State* v. *McDaniel,* 68 S. C., 310, 47 S. E., 384; *Crawford* v. *Ry. Co.,* 56 S. C., 144, 34 S. E., 80.

The defendant was not prosecuting or defending this action in any of the relations to the deceased conductor, mentioned in section 400 of Code of Procedure, and, therefore, this evidence was not rendered incompetent by the fact that the conductor was dead. *Rapley* v. *Klugh,* 40 S. C., 142.

The plaintiff denied receiving any money from the defendant in satisfaction of his claim, and it was, therefore, com-

petent, in support of this denial, for him to testify that he was unconscious while in the hospital and knew nothing of signing any release or receiving any money, and that he had no money when he left the hospital.

The defendant next insists the witness, W. J. Rees, should have been allowed "to state what his opinion was as to nature and safety of 'an embankment sixty feet wide, built of clay and sand, twelve to fifteen feet high,' when it was shown that Mr. Rees was a resident of that vicinity, and was well acquainted with the embankment in question, the dimensions and character of the embankment being in question." The witness was asked: "An embankment sixty feet wide, built of clay and sand, twelve to fifteen feet high—what would you say of an embankment of that character?" Upon objection being made the Court, without excluding the question, suggested that Mr. Reynolds, defendant's counsel, "show that witness has some knowledge of that class of work, if possible." Nothing was offered to show that the witness had any expert knowledge or any experience as to the requisite width of embankments or the resisting power of materials. The proper foundation was not, therefore, laid to make the answer to this question competent. *Parks* v. *Greenville*, 44 S. C., 169, 21 S. E., 540. In answer to an inquiry as to his opinion of this particular embankment, he testified without objection: "I never noticed the embankment until after the wreck. It looked to me like a solid embankment." This seems to have been all the witness knew on the subject.

The next exception relates to the cross-examination of the engineer Wilson as to the money he had received on account of injuries in the same wreck. We do not perceive how this evidence could have been injurious to the defendant. The witness denied that the railroad company had paid him or that it owed him anything on account of his injuries, saying that the small sum paid to him came from the relief department. There was no evidence that

payment from the relief department was founded on any claim of liability for negligence.

Failure to prove one of several acts of negligence alleged in the complaint does not furnish ground for nonsuit or for the Court to direct a verdict for the defendant, as defendant contends, although as in this case the plaintiff states in his complaint the separate acts of negligence charged somewhat as if he were stating them as several separate causes of action, by alleging after the statement of each separate act of negligence, "but for which the wreck would not have occurred." Section 186a of the Code of Procedure is conclusive on this point.

There was no error in charging the jury in connection with defendant's first request: "The railroad company in the construction of its roadbed is bound to use the highest degree of skill and care as an incident to traffic, as an incident to the protection of passengers, and to provide against any contingency that might reasonably be expected to happen. In other words, such a contingency as the reason of man would dictate would or might happen. That is the rule, as I understand it, and in that sense I charge you the first request to charge." *Zemp* v. *R. R. Co.,* 9 Rich., 84; *Johns* v. *R. R. Co.,* 39 S. C., 162, 17 S. E., 698.

The proposition that this Court cannot relieve against a refusal to grant a new trial on the ground that the evidence was overwhelmingly in favor of the losing party and insufficient to sustain the verdict, has been laid down in so many cases that citation of authority on the point is unnecessary. It is not contended there was no evidence tending to support the verdict.

In the last exception it is alleged the Circuit Judge should have granted a new trial because the verdict was a quotient verdict. The record affords no foundation for this exception, as there is nothing whatever to indicate how the jury arrived at their verdict.

While the appeal was pending in this Court the defendant made a motion to suspend it and for leave from this Court

to move before the Circuit Court for a new trial on the ground of after-discovered evidence. . The Court being evenly divided as to the sufficency of the showing as was announced at the hearing the motion failed, and all matters relating to it are now *res adjudicata.*