8819

THORNTON v. SEABOARD AIR LINE RAILWAY.

(82 S. E. 433.)

MASTER AND SERVANT. FEDERAL EMPLOYERS' LIABILITY ACT. NEGLIGENCE. ISSUE FOR JURY. DAMAGES. ASSUMPTION OF RISKS. CHARGE. APPEAL AND ERROR.

1. Evidence tending to show that decedent, a car inspector employed in defendant's railroad yard, left its office in a normal condition of mind to inspect an incoming train on the main track; at the same time a switch engine was backing a train of cars on an adjoining track, down the yard, which was dark and unlighted, with no lights or person on the advancing cars or person going ahead of them, or other warning given to warn the employees in the yard of their approach; and that decedent failed to arrive at the point on the main track where he was to commence the inspection of the cars in the incoming train, and was found, later, lying on the sidetrack on which the switch engine had been backing said cars, and had apparently

been dragged about 250 yards from a point where his cap was found between the main and sidetracks, with his torch a couple of yards off and blood on the wheels of the cars which had been backed on the sidetrack, indicating they had run over him. *Held,* sufficient to go to the jury on the issue of whether or not decedent's death was caused by the acts of negligence, or some of them, on the part of defendant alleged in the complaint.

2. In an action for negligent injuries or wrongful death, plaintiff's failure to prove one of the several acts of negligence alleged does not warrant the direction of a verdict for defendant.

3. Where the servant of a railroad was run down in the yards, but there were no eyewitnesses to his death, it will not be presumed that he intended to commit suicide, and threw himself under the cars, but it will be presumed that he was attempting to carry out his duties with due care.

4. While negligence cannot be presumed, but must be proved, it may be established by circumstantial evidence.

5. If there is no competent evidence to go to the jury, a nonsuit should be granted.

6. A charge that a recovery could be had under the Federal Employers' Liability Act for the damages suffered by the wife and children of decedent only if dependent upon him, and only to the extent that he contributed to their needs, and that in estimating such damages the jury might take into consideration such contributions as a married daughter or adult child would reasonably have a right to expect, under circumstances rendering such daughter or child dependent upon such parent; *held,* not error, and if erroneous, then harmless, as there was no evidence that decedent contributed to such daughter or child.

7. Where the Court, in an action for the wrongful death of a husband and father, charged that the law only intended to reimburse the family dependent upon the husband, a charge that it made no difference how much the deceased was earning, the question being how much did he contribute for the support of his family, if erroneous, was harmless.

8. In an action for the wrongful death of a father, where a charge was requested that in determining the probable duration of contributions to children, one of whom was married, and the other of whom was a boy 14 years of age, it must be considered that there was no legal responsibility resting on the father to support children who have arrived at the age of 21 years, it was not error to add that if those should be found the facts, they should be considered.

9. Under the Federal Employers' Liability Act (Act Feb. 22, 1908, c 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]), a servant does not assume the risk of injuries occasioned by the master's negligence.

10. The refusal of a charge in an action for the wrongful death of a servant, which assumed that he was not killed in a certain manner, is proper, where the evidence raised conflicting inferences.

Before PRINCE, J., Abbeville, April, 1913. Affirmed.

Action by Ella M. Thornton, administrator of estate of J. F. Thornton, deceased, against Seaboard Air Line Railway. The facts are stated in the opinion. From a judgment for plaintiff, defendant appeals.

The charge of the trial Court, and exceptions thereto were as follows:

Mr. Foreman and Gentlemen of the Jury: The time has come in the progress of this cause when it becomes my duty to declare unto you the law applicable to this case, and I leave it to you to apply the law as I give it to the facts as you find them, and write an honest verdict, whether it be for the plaintiff or whether it be for the defendant.

Now, the plaintiff comes into Court complaining of the defendant and alleges that defendant is a railway corporation engaged in interstate commerce and that, at that time mentioned in the complaint, the intestate, who was the husband of plaintiff and the father of two children, if you find that he was the husband of plaintiff and the father of two children, for whose benefit this action is brought, was in the employ of an interstate railway, and that he lost his life while engaged in inspecting an interstate train by reason of certain negligent conduct on the part of the defendant, its servants and agents.

FOOTNOTE.—On the question whether a servant may assume the risk of dangers created by the master's negligence, see notes in 4 L. R. A. (N. S.) 848, and 28 L. R. A. (N. S.) 1215. Also see notes on assumption of risk on failure of master to perform statutory duty, in 6 L. R. A. (N. S.) 981, 19 *Ib.* 646, 22 *Ib.* 634, 33 *Ib.* 646, 42 *Ib.* 1229, 49 *Ib.* 471; 4 Am. & Eng. Ann. Cases 599, 13 *Ib.* 36, and in Ann. Cas. 1913, C. 210. As to the distinction between the rule *res ipsa loquitur* and the rule as to circumstantial evidence of negligence. See note in 6 L. R. A. (N. S.) 337.

The allegations of negligence, as I recall, are: That they did not have the yard, the freight yard of the defendant, properly lighted; that they backed a train of cars into a siding without having stationed at the end of the cars a man to warn the people who might be upon the track, of the approach of the cars; that they did not have a light upon the end of the cars. Now, what other acts of negligence? I recall four, which are as follows: First, did not have the yards properly lighted; second, did not have a light on the end of the cars that they were backing down the track; third, did not keep a proper lookout; and, fourth, no one to go ahead of the train to warn people of its approach.

Now, Mr. Foreman, these are the acts of negligence alleged in the complaint, and to those acts of negligence the plaintiff is bound as with a bond, and she must either prove those acts of negligence alleged in her complaint or fail. If she proves those, she must go further and satisfy you by the greater weight of evidence that one or more acts of negligence complained of in her complaint was the proximate cause of the death of her husband.

Now, Mr. Foreman, the defendant comes into Court and admits that it is a railroad engaged in interstate commerce, and that the defendant was in its employ and met his death in its yards, but denies every act of negligence complained of and denies the responsibility for his death. Now, those are the issues raised by the pleadings.

Mr. Foreman, a great deal has been said about this act of Congress, passed in 1908, known as the "Federal Employers' Liability Act." I charge you that this act of Congress did not undertake to prescribe the duties of the master to the servant, or to define the duties of the master to the servant, the railroad to its employees. The obvious purpose of this act was to confer upon certain surviving relatives the right to maintain an action that they could not have maintained at common law. At common law, Mr. Foreman, if a man was injured through the wrongful conduct of

another and died before action was brought, no right survived to his relatives or next of kin, although he may have instituted suit before his death, yet upon his death the right of action abated. The obvious purpose of Congress was to confer upon relatives of certain employees engaged in interstate commerce the right to maintain an action for the wrongful death of an employee of a railroad engaged in interstate commerce, that was the purpose of that act.

Prior to that time, we had no Federal law on the subject, although the Constitution of the United States had given over to the Federal Congress the authority to regulate interstate commerce. Now, prior to that time the different States had adopted different regulations and prescribed different rights of action. A great many of the States, probably a majority of them, had adopted what is known as the "Lord Campbell Act," an act adopted with some slight modifications in South Carolina years ago, and it had been the State law up to the time of the passage of this Federal Employers' Liability Act, which is now exclusive for all wrongful deaths of employees of railroad companies engaged in interstate commerce; that is exclusive; that wiped out all State law in so far as it bestows a right of action on certain surviving relatives of employees of railroads engaged in interstate commerce. We must look to that act to see what rights are given to the personal representatives and for whose benefit that right of action is given under that act. Unto that act also, must we look for guidance in this case. Now, Mr. Foreman, it provides that an administrator or personal representative of an employee, working for a railroad while engaged in interstate commerce, should have the right to maintain an action for the benefit of certain relatives for the wrongful death of the employee; the death of an employee that resulted while engaged in interstate commerce or about the business of an interstate carrier while engaged in interstate commerce, through wrongful conduct of the interstate carrier, or rail-

road company, through its negligence, wilfulness or wantonness; it does not make any difference.   Now, Mr. Foreman, this act does not undertake to prescribe what is negligence; it leaves the law as to what constitutes negligence where it existed before.    It creates and prescribes no new duty of the master to the servant, but merely gives a right of action for the benefit of certain surviving relatives, that did not exist at common law.   Now, Mr. Foreman, for what did it give a right of action?   Not only for the negligence of the master, but for the negligence of the officers or servants of the master while engaged in interstate commerce.

Now, prior to that time in some States and prior to a certain date in South Carolina no right of action was given for the wrongful death of an employee or servant when his death was the proximate result of the negligence of a fellow servant or fellow employee, but under this act a right of action is given for the wrongful death of an employee caused by the negligence of a fellow employee or an officer of the company while engaged in interstate commerce.   For whose benefit might the action be maintained, under this act, in derogation of common law?   This new right given by Congress is for the benefit of whom?   (1) For the benefit of the man's wife and children surviving him; if none, then for his parents; if none, then for the next of kin dependent upon him; and if none, then the cause or right of action fails.   For those beneficiaries named and no other this act of Congress gives the right of action.

Now, Mr. Foreman, while this act does not undertake to prescribe, in any manner, the duties of the master to the servant, yet, under the law that was evidently recognized by Congress when it adopted this act.   That it was assumed by Congress in adopting the act that the master did owe certain duties to the servant, and what were they?   Duties that he could not assign to another so as to save himself from liability, to save himself of the responsibility for failure to perform those duties by another, and therefore, these certain

23—98.

duties that are devolved by law upon the master are spoken of as nondelegable and nonassignable duties. What are they? They are the duties that rest upon every master; the duty that rests upon every master is to furnish the servant a place in which to do the work; that is, a *reasonably* safe place for the performance of the duties required of the servant. That is a nondelegable and nonassignable duty. The master is held to this degree of care in furnishing this place; that he exercise in furnishing this place the same care which a man of ordinary prudence would have exercised in like circumstances, to see that the place is reasonably safe and suitable for the performance of the duties devolved upon the servant.

Mr. Foreman, the law does not impose upon the master the duty of providing the *safest* place in which to work; nor does it impose upon the master the duty of furnishing or supplying a safer place for the servant; it only imposes this duty upon the master, and it imposes it with emphasis, that he shall furnish a place that is *reasonably safe and suitable* for the performance of the duties required of the servant. It is the duty of the master to furnish reasonably safe and suitable appliances; not the safest or the most modern, that is not necessarily so, but appliances that are reasonably safe and suitable and to keep them in reasonably safe and suitable repair for the safety of the servant. That is all the law requires of the master. A failure to exercise that degree of care, gentlemen, would be negligence; a failure to do that which a man of ordinary prudence would have done in the circumstances, or the doing of that which a man of ordinary prudence would not have done in the circumstances, would be negligence.

Mr. Foreman, the burden rests upon the plaintiff in this case to show that the master had been negligent in one or more acts complained of, and, as a proximate result of that negligence, plaintiff's intestate met his death. It is not enough to show that plaintiff's intestate was killed by

defendant, railway company's train; it is not enough to show that his death was the result of some negligence on defendant's part, or its servants or agents. The law requires the plaintiff to prove not only that her husband met his death by the instrumentalities complained of, but that it was the proximate result of that *particular negligence* set out in her complaint, and though it might appear that he was killed by the railway and killed as a proximate result of the negligence of the railway, but unless it was that *particular negligence alleged in the complaint* the railway *could not* be held liable in this case.

Now, gentlemen, every servant assumes the risk or risks, I will say, that are ordinarily incident to his employment. That does not include the risk of the negligence of a fellow servant, and never includes the risks of the negligence of the master in the performance of one of these nondelegable, nonassignable duties, nor does he assume, under this act, the risks of the violation by the master of any act that undertakes to prescribe and regulate the duties of the master to the servant, such as the Federal Safety Appliance Act, and this is the only act that has been brought to my attention. When I speak of acts, I mean the Federal act, the only one that has been brought to my attention. That act is not necessarily involved in this case; it is not involved in this case. There is no testimony that I recall at this moment showing that there was a failure to furnish the appliances provided for by act of Congress, known as the Safety Appliance Act. I do not recall any testimony that these certain cars complained of in the complaint were not equipped with safety appliances. That is not the act under which we are trying this case.

Now, all risks ordinarily incident to employment the servant assumes when he enters upon the discharge of the duties that are his under the employment; I mean, of which he has knowledge or is presumed to have knowledge, those that are open or apparent. Of course, he does not assume

the risks of hidden or concealed dangers, but those that are apparent; those he could see by the exercise of ordinary diligence.   He assumes the risks that are ordinarly incident to his employment, except risks—I say he never assumes the risks of the negligence of the master when performing one of those nondelegable, nonassignable duties, the negligence of his fellow servant, nor does he assume the risks of the failure of the master to obey any statute that undertakes to prescribe the master's duty to the servant; those are not assumed.

Mr. Foreman, the defendant pleads contributory negligence.   Contributory negligence, of course, will not be considered by you unless you should conclude that plaintiff has established not only the wrongful death of her intestate, but that his death was the proximate result of one of the acts of negligence complained of in her complaint.   Now, if she has done that, and you are satisfied of this by the greater weight of evidence, you are then to consider the plea of contributory negligence.   Now, under our statute law, that is, our State law, when contributory negligence is a proximate cause of plaintiff's injury and without which it would not have happened, it would be a complete bar.   I mean, it would be a complete bar to plaintiff's recovery, but, under the Federal law, it is not a complete bar, even when properly established; it only mitigates.   The jury should only decrease the damages awarded against the defendant in proportion to the comparative negligence of plaintiff's intestate; in other words, if you should find that both the master and the servant, railway and the deceased, were negligent, and the negligence of both, the master and the servant, the railway company and the deceased, when combined, was the proximate cause of his death, and without his own negligence he would not have met his death; under our statute law that would be a bar, but under the Federal law, it would not be a complete bar to recovery.   It is only to be considered by the jury in determining what damages they should award

plaintiff, and they should apportion the verdict according to the relative negligence of the railway company, its servants and agents, and the deceased.

Now, Mr. Foreman, if plaintiff has established her right to recover at all in this case; of course, I should say right here, however, that if plaintiff's intestate met his death through one of the risks ordinarily incident to that employment, and was not a risk brought about by reason of the negligence of the master, intestate's fellow servants, or other officers and agents of the company, then and in that case it would be a risk assumed by plaintiff's intestate; unless it was a risk caused by some failure of the company to observe some act of Congress that has been enacted for the benefit and protection of the employee, then it was assumed that he met his death under one of those assumed risks and plaintiff would not be entitled to recover in this case, but suppose, Mr. Foreman, the plea of contributory negligence has not been established by the greater weight of evidence, or suppose you cannot say where lies the greater weight of evidence on this issue, then the defendant fails to establish the plea, and in such case, if you should find that the deceased came to his death through the wrongful conduct or act of the defendant, its servants or agents, in the manner complained of, and due to the acts of negligence alleged in the complaint, then how much would you allow plaintiff? Mr. Foreman, you should allow the plaintiff, for the benefit of the wife and children, just such compensation, or damages rather, as would compensate for the loss of financial support, and nothing else. Now, this act of Congress differs from our State law in some respects, one of which is, under our State law, we could allow for the loss of society of the husband where he has been wrongfully killed, and the wife and children would be entitled to compensation for the loss of the society of the husband and father, but it is not true now under this act of Congress. You cannot take into consideration the pain and suffering arising from the sorrow

and grief at the husband's and father's death, if you find that he was the husband and father. You cannot take that into consideration as you could under the State law. All that you can take into consideration is the loss of financial support. It makes no difference, Mr. Foreman, under this act what was the earning capacity of the deceased; it matters not how much money he might have earned; it has nothing to do with the case. The question is, how much did he contribute to the support and maintenance of his wife and children. That is the question, and the burden rests upon plaintiff to show how much he contributed, and plaintiff can only recover in this case, if she is entitled to recover at all, the amount she has shown by the greater weight of evidence, that she and her children have been deprived of by reason of the wrongful death of her husband. That is all. And in that respect, the law of Congress is somewhat different from the State law, and we cannot take into consideration all the many things that we could take into consideration under the State law that has been repealed by this act.

Now, it is this: What was the financial loss to the plaintiff and her children, or what financial loss may they have reasonably anticipated? It is for you to say what that support would have been. In determining that, Mr. Foreman, since this law only intended to reimburse the members of the family dependent upon the husband whose death was caused by the wrongful act of another, you can allow such damages as those persons were reasonably expected to receive, and no more. Mr. Foreman, you have a right in determining this matter to consider the ages of those children. You have a right to consider the fact that even though a child be of good physical capacity and intellectual capacity, as long as it is a minor, it would have the right to reasonably expect to be supported or maintained by its father. You would have a right to consider the fact that the daughter is married, if she is married; you would have the right to take into consideration the question as to whether she would have rea-

sonably expected any contribution to her support from her father, if living. Would he probably have granted it? While you may allow children to recover under this act who are beyond the age of twenty-one years it must be by reason of some inability or incapacity of the children to earn a livelihood, because this act was intended to compensate people who are dependent relatives, who are dependent upon the deceased for support, and only to the extent to which they are dependent. Those are matters for you to take into consideration. Now, Mr. Foreman, when you come to another view of the event to which you must take into consideration the loss, under our statute, and under our law, it is permitted that this mortuary table, which has been read, may be offered in evidence, to determine the probable expectancy of life in any case. This table is not intended to be absolutely binding and conclusive, but is offered for the consideration of the jury just like any other testimony, and the jury may take the life expectancy as prescribed in those figures in determining the probable expectancy of life, if determining how long this man would have probably lived had he not met with a violent death.

Now, Mr. Foreman, in considering the loss to his family, you must consider the probable duration of support he would have rendered his family, and, of course, in considering that, you necessarily take into consideration his probable length of life, or what term of years he might have reasonably expected to live. You will take into consideration, Mr. Foreman, his reasonable, if any, expectancy of increased experience by reason of increased knowledge of his business in considering whether or not that would have probably increased his earning capacity. In that connection, Mr. Foreman, take into consideration whether or not he would have contributed more to the support and maintenance of his family had his earnings increased. You may take into consideration the probability or possibility of his earning capacity decreasing with the coming years as he grew older.

These are matters you are to consider in determining how long this man would probably have lived, and to what extent the amount devoted to his family's support would be increased or decreased as age grew on. These are matters for your consideration. I cannot help you; you must settle all that. Take your good common sense and your conscience into the jury room and apply them both as straight-edges to the testimony as you have heard it, and the law as I have given it to you, and make application of the law to the evidence and let your verdict speak the truth. You and I do not care who wins this case. We are not interested in plaintiff's recovery, nor in defendant's recovery. It makes no difference to us who wins, provided the right obtains according to our best judgment; that is all for which we are responsible. In our present capacity we are not responsible for the law, nor in our present capacity are we responsible for the facts or the proof or the failure of proof. We must take the case as we find it, and apply to the facts as straight-edges our common sense and good consciences and write a righteous verdict. Anything short of that would be dishonor to our manhood, and anything more than that would be disgraceful. That is what we have to do. Write an honest verdict, whether it is for plaintiff or defendant, and that verdict must be your honest judgment under the law as I have given it to you, and the facts as you find them to be from the evidence.

Now, Mr. Foreman, if it were not for the fact that I have been handed numerous requests for charge, I would think that I have said enough, but it is the privilege of counsel to formulate these requests for charge and it is the duty of the Judge to pass on those requests, and say whether they be right or wrong in his declaration of the law to the jury, and I will proceed to do so. * * *

Defendant's counsel has handed me requests for charge, which are as follows:

I. Plaintiff brings her action as personal representative to recover damages for herself and her children on account of the death of her husband. The jury is instructed that she can recover no damages except pecuniary loss sustained by herself and her children on account of such death, even if she is entitled to recover.

By the Court: I charge you that, provided you find that she is otherwise entitled to recover.

II. No damages can be given on account of grief or wounded feelings of the plaintiff or her children.

By the Court: I charge you that.

III. No damages can be given for the loss of society or companionship of the plaintiff's deceased husband.

By the Court: I charge you that.

IV. The jury can only give damages for such sums as there was a reasonable expectation of plaintiff and her children receiving from decedent during his life.

By the Court: I charge you that; that is, had he not been killed.

V. The jury cannot give the plaintiff the full amount of money which her decedent was receiving multiplied by the number of years which he would reasonably have been expected to live, but the verdict for damages, if damages are recovered, must be based upon the amount which plaintiff and her children might reasonably have expected to receive from decedent.

By the Court: I charge that except I modify it. A man may give all his earnings to his family. If the proof satisfies you that he did so in this case, then you are to take into consideration the full amount of his earnings in arriving at your verdict.

VI. You are further instructed that you cannot arrive at the amount which plaintiff annually contributed to the support of his wife and children, or for their benefit, and then multiply that amount by number of years that he would reasonably be expected to live, but you can only give the

present value of the pecuniary loss of the beneficiaries by reason of the death of the intestate. You can only give the sum which would represent the present value of the various sums, or the annual sums which the beneficiaries would reasonably expect to have received in the future but for the death of the intestate.

By the Court: I charge you that, Mr. Foreman. The jury cannot take the expectancy and multiply what they received annually by the expectancy and arrive at it; that would not be a correct estimate. That would be giving them now what they would reasonably expect to receive in the future. You must reduce what they would reasonably have expected to receive to a present value.

VII. In awarding damages, the jury must take into consideration the fact that the earning power of the deceased might, at any time, have been materially, or even wholly destroyed. You are to further consider and make proper allowances for the probable decreased earning power of the deceased arriving at the approaching old age.

By the Court: I charge you that with this modification: that if you find his earning capacity would probably be increased, you can take that into consideration just as you take into consideration the probability of his earning capacity being decreased; just whatever is probable.

VIII. You must consider in estimating damages, if any damages are awarded, the probable duration of the contributions which husband and father would have made to his wife and children, and in arriving at this, you should consider the probable expectancy of the life of the husband and father, how long he would have lived to have given them money, you must also bear in mind the probable duration of the contributions to the children, one of whom is now married and the other of whom is a boy fourteen years of age, and you must consider that there is no legal responsibility resting upon the father to support the children that arrive at the age of twenty-one years.

By the Court: I charge you that, Mr. Foreman, if you should find that one of the children is married and the other a boy fourteen years of age; if you should find those to be the facts, then you are to take into consideration those facts in determining how long the father would have probably contributed to their support in getting at the amount.

IX. If you conclude to award damages, you are to consider the probabilities whether or not the father's contributions to the children would have ceased when they reached the age of maturity, or at their marriage, or whether they would have ceased before that time.

By the Court: I charge you that, Mr. Foreman, but I charge you that after reaching the age of twenty-one years, or married, children are not permitted to recover; a father may not be legally responsible for the support and maintenance of his children after they are twenty-one years of age, but if they should be sick and helpless, they would have a right to expect the parents to assist them in making a support. You are to take into consideration what they would reasonably have a right to expect in the event of such conditions.

X. In estimating damages, if you conclude to award damages, you must consider how much of his earnings he would have reasonably spent on himself, as the part of his wages he expended on himself could not be considered in estimating the damages his wife and children might have suffered.

By the Court: I charge you that. If in estimating the sum his wife and children might expect—that means simply that what the husband used on himself for his own support and maintenance, cannot be considered by you in determining what loss the wife and children suffered. The question is, what they have lost and what they have suffered. You cannot take into consideration the amount he expended on himself, except you can take into consideration the amount he had left of his earnings after spending a certain amount on himself.

XI. You are further instructed, if you conclude to award damages, that only the sum of money can be given to the beneficiaries entitled to recover under the acts of Congress that would compensate them for the actual pecuniary loss sustained by them because of the death of the husband and father.

By the Court: That is just what I have told you before. If the plaintiff is entitled to recover at all, she is only entitled to recover pecuniary loss sustained by her and her children because of the death of the husband and father.

XII. You are further instructed that even if you conclude to allow damages, you must bear in mind that the deceased, had he lived, may at times been out of employment with or without his own fault, the probalility of his earning capacity becoming totally or partially impaired through sickness or other contingencies, that his life might have been terminated by causes within his control, or not within his control, all of which possibilities compel the reduction of the gross calculation.

By the Court: I charge you that.

XIII. You must further consider, if you decide to award damages, that by a present payment the beneficiaries would get the benefit of accrued interest on any sum you might award to them, and you must make allowance for this. Guided by these and other considerations, you can only give that lump sum of money as damages which as a present payment would compensate the beneficiaries for whose benefit this action is brought, for the actual pecuniary loss sustained by them.

By the Court: Yes, I think that is right, and practically what I have told you two or three times.

XIV. You are further instructed that you are not to accept as absolute certainty the period of expectancy based upon the mortality tables which have been offered in 'evidence, these are intended to guide, but not to control you. They are based upon averages. There is no absolute certainty that

any person would live the average duration of life laid down by these tables. They are at best probabilities, and man's expectancy varies with, or may vary with, his employment. His expectancy will also vary, or may vary on account of his own physical condition, or his health and other considerations, and the jury should consider all of these matters in arriving at the probable length of time which the deceased would have labored and been able to labor.

By the Court: I charge you that, gentlemen; that you are to consider all these things, the probable length of his life, consider his habits, nature of his employment, physical condition, health, etc. You are to take into consideration all these things, and by your good sense and judgment applied to the facts as you find them, determine how long this man would probably have lived. Of course, that would be an estimate. We cannot say with absolute certainty how long a man would live, but you have a right to form your estimate, provided you do so according to your best understanding after reviewing all the testimony in the case and considering all probabilities that would be suggested by common experience.

XV. You must not allow any damages, if you decide to award damages, on account of sympathy, bereavement, or on account of love and devotion that may have existed between husband and wife, father and children, nor on account of their sorrow and loss of companionship, or grief or wounded feelings, or anything of that kind resulting from the death of the husband and father.

By the Court: I have already charged you that.

XVI. The jury is instructed that under the Federal law, when plaintiff's decedent entered the employ of the defendant, he assumed the risks incident to the defendant's manner of performing its duties. He was a man of mature years, judgment and discretion, and knew the dangers ordinarily incident to working in a yard where the tracks are close together, and of working in the yard where he lighted him-

self with lamps, and the jury is instructed that, knowing these facts, it was not negligence as to him for the master to perform and carry on its business without lights other than the lanterns which its employees carried in the yard, and he assumed the risk of doing the business assigned to him by the master in the way designated and assumed all risks incident to performing its said duties, without the yards being lighted, except as provided for him by the master.

By the Court: I won't charge you that he was a man of mature years, as counsel has asked me to do, but I charge you in this way: if you find him to be a man of mature age, judgment and discretion, and he knew the dangers ordinarily incident to the work on defendant's yard where the tracks are close together, and working in a yard where he lighted himself with lanterns, the jury is instructed to arrive at these facts, but that is not enough. I am not going to charge it in that way. I will refer you to my general charge about that question of lights. If you should find that the practice and custom of the defendant company was to have its employees use lanterns and flambeaux and if you should find that the use of such lanterns and flambeaux sufficiently lighted the yard for the reasonable safety of its employees, who were exercising for themselves due care for their own safety, then the master could not be charged with negligence in not having it lighted in some other way; if that way was reasonably adequate for the safety of the employees who themselves exercised due care for their own safety. To furnish that degree of light which would render a place reasonably safe for an employee working there with reasonable or ordinary care for his own safety, is all the law requires. And if those lights were reasonably adequate for that purpose, that is all the law requires, even though the place might have been better lighted in some other manner. The question is, was that method *reasonably adequate* for the safety of the employees who themselves were exercising ordinary care for their own safety.

XVII.

By the Court: I decline to charge you No. 17.

Court did not read No. 17 to the jury, but this request reads as follows: 'It is alleged in the complaint that Thornton was killed while in the act of inspecting train No. 25. The testimony in this case shows that he was not so killed and the jury is instructed not to consider that allegation in passing upon this said case.

XVIII. The only other charge made in this case is that while Thornton was in the yard for the purpose of inspecting train No. 25, a string of cars backed down upon him, and that the rear end of said train of cars, or some car thereof, struck him and knocked him down and that he was killed in that way, through the negligence of the defendant, as alleged in the complaint. The jury is instructed that unless the plaintiff has satisfied them by the preponderance of the testimony that Thornton was struck by the rear end of the said string of cars as it backed down through the yard, or some car thereof, and killed, there can be no recovery in this case, but the verdict must be for the defendant.

By the Court: I think counsel meant to say "some part thereof struck him and knocked him down" instead of "some car thereof."

(Counsel replies in the affirmative.)

I charge you that. If you find that he met his death that way by either being run down or knocked under the train, by either that string of cars or one on the main line, they complain of, if either of those caused his death through some act of negligence alleged in the complaint, then plaintiff would be entitled to recover by reason of the fact that deceased left beneficiaries, as required by the statute, if you so find. I will charge you that coupled with this understanding. My understanding of the law is that if he was injured by either the train of cars on the main line or by this string of cars, of which you have heard spoken, and run over by either, or knocked down by either, and run over by

one, and that act that caused his death was the proximate result of some act of negligence complained of in the complaint, then the defendant would be liable; but, if he was injured and was not injured that way at all, but by some other act of negligence on the part of the defendant, it would not be liable. It must be some act, or acts of negligence complaint, the defendant is not liable here, and it would be death as herein alleged, by some act, or acts alleged in the complaint, the defendant is not liable here, and it would be your duty to write a verdict for the defendant.

XIX. The burden of proof is upon the plaintiff to satisfy the jury that Thornton came to his death in the manner and by the means alleged and set forth in the complaint, and as the result of the negligent acts set forth therein, and, if the jury in this case is unable to say from the preponderance of the testimony that the rear end of the said string of cars, or some car thereof, struck him and knocked him down and killed him as alleged in the complaint, they must find for the defendant.

By the Court: I charge you that, Mr. Foreman, provided that if that string of cars, or that train of cars on the main line, if either knocked him down and caused him to be run over and if that striking him was the proximate result of some act of negligence of the defendant company, complained of in the complaint, then the plaintiff would be entitled to recover, if she has proven that deceased left a wife and children.

XX. That if after hearing all the testimony the jury can not say whether Thornton came to his death in the manner alleged in the complaint—that is, by being struck by the rear end of the string of cars or a car thereof, or from some other cause, or in some other way, a verdict must be rendered for the defendant.

By the Court: I will charge you in my own language. If you cannot say after careful consideration of all the testimony in what manner this man came to his death, through.

what negligence or acts of negligence he came to his death operating as a proximate cause—if you cannot say where lies the greater weight of evidence in this case, then it is your duty to write a verdict for the defendant, because in order to justify plaintiff's recovery, she must show that the deceased came to his death in the manner suggested in her complaint and by reason of the particular acts of negligence complained of, and unless she does so, she is not entitled to recover.

XXI. That the mere fact that plaintiff's intestate was killed gives no right of action, nor is there any presumption of negligence from the fact that an employee was killed, but the burden is on plaintiff to prove that he was killed by the rear end of the string of cars, or some car thereof, as alleged, and as a result of the negligence alleged.

By the Court: I have covered that in my charge.

Now, gentlemen, I have taken a great deal of time, about half as much as I have allowed counsel, because I want you to understand this case. This is a new act under which this case is brought, new to us although it has been on the books since 1908, and it is very important that both the Judge and the jury should understand the legal duties devolved upon the railroad to its servants, and by that I mean employees, every employee is a servant under the law. I do not mean to speak disrespectfully of deceased in referring to him as "servant." I speak of him as a servant only in sight of the law. It is our duty to fully understand what the law is as it is your duty to fully understand what the facts are, and it is up to you. If plaintiff is entitled to recover at all, she must recover by reason of the fact that she has established, by the greater weight of evidence, her cause of action, and that defendant has failed to establish, by greater weight of evidence its plea of assumption of risk, and then in its other defense, contributory negligence. If you should find that deceased was guilty of contributory negligence, that would only mitigate the damages to be allowed plaintiff, if she is otherwise entitled to recover.

24—98.

I am handing you the complaint and answer in this case, and if you desire to refresh your memory as to the issues raised in the pleading, you may read them. I am going to give you plenty of time in which to consider this case. Now take this (indicating) and write your verdict on the back of the original complaint. Let your verdict be in this form. If you find for plaintiff, say: "We find for plaintiff so many dollars," writing it out in words and not in figures. If you find for defendant, say: "We find for defendant." That is all you need say, for the defendant is not seeking to recover anything. Underneath your verdict, Mr. Foreman, sign your name and under that write the word "Foreman."

The defendant's sixth, seventh, eighth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, eighteenth and nineteenth exceptions, were as follows:

VI. Because his Honor erred in instructing the jury that they would have a right in estimating damages to take into consideration the question as to whether or not the married daughter of the plaintiff's deceased would have reasonably expected any contribution to her support from her father, if living. It is respectfully submitted, that in the absence of proof, no damages could be awarded to the plaintiff on account of said married daughter, and in this case there was no proof of any expectation of financial assistance from the plaintiff's deceased, to such married daughter, and therefore it was in error to allow the jury to pass upon this question and to speculate as to such damages.

VII. Because his Honor erred in charging the jury as to whether or not the father would have made contributions towards the support of his married daughter, as follows:

"Would he probably have granted it? While you may allow children to recover under this act, who are beyond the age of twenty-one years, it must be by reason of some inability or incapacity of the children to earn a livelihood, because this act was intended to compensate people who are depend-

ent relatives, who are dependent upon the deceased for sup-
port, and only to the extent to which they are dependent.
Those are matters for you to take into consideration."

The error consists in this, that there was no evidence in
this case that the said married daughter was unable or inca-
pable of earning a livelihood, or that her husband was unable
or incapable of earning a livelihood for her, and there was
no evidence that she was either dependent or likely to be
dependent upon the plaintiff's deceased, and it was, there-
fore, error to submit this to the jury and allow it to speculate
upon these matters.

VIII. Because his Honor erred in charging the jury as
follows: "You will take into consideration, Mr. Foreman,
his reasonable, if any, expectancy of increased experience by
reason of increased knowledge of his business in considering
whether or not that would have probably increased his earn-
ing capacity." In that connection, Mr. Foreman, take into
consideration whether or not he would have contributed
more to the support and maintenance of his family had his
earnings increased."

The error consists in this, that there was no allegation or
proof that plaintiff expected, or had any reason to expect,
any increased earning capacity, or that it was probable, and
it is respectfully submitted that such being the case, his
Honor erred in allowing the jury to speculate upon this
question and to take into consideration matters not raised,
either by the pleadings or the proof. Under the act in ques-
tion only such damages could be recovered as were proved
to have been suffered and there was, and is no proof, nor evi-
dence that plaintiff's intestate expected, or had any right to
expect, any increase in his wages over and above what he
was at that time receiving.

It is, therefore, submitted that said charge was harmful
to the defendant herein and erroneous.

XI. Because his Honor erred in charging the jury in
response to the eleventh request to charge that if the yards

of the defendant, where Thornton had to work, were insufficiently lighted out of the negligence of the defendant, then the said Thornton could not be held to assume any risks caused by the said insufficient lighting. It is submitted that under the Federal law, applicable to this case, that when Thornton entered the employ of the defendant, knowing how the yards were lighted, and being a man of mature years, and judgment, he assumed the risks of all injuries resulting from the manner in which the defendant lighted its yards and as to him that manner of lighting was not negligence.

The charge was further erroneous in this, that the undisputed evidence in this case shows that the yards were properly lighted, and that the employees of the company had lights suitable for operating trains, and it was error to allow the jury to pass upon this uncontradicted testimony and to find contrary to it without evidence.

XII. Because his Honor erred in charging the jury that under the acts of Congress, upon which this case was founded, the employee of railroad companies does not assume the risks of injury, which are brought about by the negligence of the railroad company. The error consists in this: the charge can only be applicable to the manner in which the defendant lighted its yards, and the facts in this case showing that the plaintiff's intestate entered the employ of the defendant, knowing how the yards were lighted, and that he continued in the employ of the defendant, using such lights as were furnished him without objection, he assumed all risks incident to the performance of his duties with such lights, even though it may have been negligence on the part of the defendant in not furnishing other lights.

The charge was further erroneous in that as to Thornton it was not negligence to so light the yards of the defendant by reason of the fact that he entered the employ of the defendant, knowing how the yards were lighted. He was a man of mature years and judgment and continued in the

employ of the defendant knowing that the yards were so lighted, and as to him it was not negligence to carry on the business of the defendant in this way.'

XIII. Because his Honor charged the jury in response to the eleventh request of the plaintiff as follows: "I charge you that, Mr. Foreman, but I charge you that after reaching the age of twenty-one years, or married, children are not permitted to recover; a father may not be legally responsible for the support and maintenance of his children after they are twenty-one years of age, but if they should be sick and helpless, they would have a right to expect the parents to assist them in making a support. You are to take into consideration what they would reasonably have a right to expect in the event of such conditions."

(a) It is submitted that the said charge in so far as it is assist the min making a support. You are to take into consideration what they would reasonably have a right to expect a charge upon the facts in this case, contrary to the provisions of the Constitution of this State forbidding Judges from charging juries with respect to matters of fact.

(b) It is submitted that the charge was erroneous in that there is no evidence in the case that either of the children is sick or helpless or likely so to be, and for that reason they will need any assistance from the parent after arriving at the age of twenty-one years, or since marriage, and therefore the charge of his Honor permitted the jury to speculate as to matters of damages in this case without proof.

(c) It is further submitted that under the Employers' Liability Act in this case, no damages can be recovered except pecuniary damages *proved* to have been suffered; and in this case there is no allegation or evidence as to damages resulting from a sick or helpless condition of children after they reached the age of twenty-one years, or married, and it was error for his Honor to instruct the jury to take that matter into consideration. There was no evidence from which a reasonable expectancy of such event might be anticipated,

and it was error to allow the jury to speculate as to such damages.

The charge was further erroneous in that it allowed the jury to add to the damages purely a speculative amount without evidence to support it and at the mere caprice of the jury. Such damages cannot be awarded under the provisions of the Federal Employers' Liability Act.

XIV. Because his Honor erred in refusing to charge the sixteenth request of the defendant as follows:

"The jury is instructed that under the Federal law, when plaintiff's decedent entered the employ of the defendant he assumed the risks incident to the defendant's manner of performing its duties. He was a man of mature years, judgment, and discretion, and knew the dangers ordinarily incident to working in a yard where the tracks are close together, and of working in the yard where he lighted himself with lamps, and the jury is instructed that, knowing these facts, it was not negligence as to him for the master to perform and carry on its business without lights other than the lanterns which its employees carried in the yard, and he assumed the risk of doing the business assigned to him by the master in the way designated and assumed all risks incident to performing its said duties, without the yards being lighted except as provided for him by the master."

It is respectfully submitted that the said requests stated nothing but the admitted facts of the case, and the law applicable to the admitted facts; and that his Honor erred in not charging the said request as submitted and erred in modifying the same, by allowing the jury to say without evidence to support it that the place was not reasonably safe for the plaintiff's intestate to perform its duties, when the undisputed testimony shows that as to plaintiff's intestate there was no negligence in the manner in which its yards were lighted, and that he assumed all risks incident to performing

his duties in the yard of the defendant with the lights furnished him.

The refusal to charge the said request effectually denied to defendant the plea of assumption of risks to which it was entitled under the Federal Employers' Liability Act.

XV. Because his Honor erred in not charging the jury at the request of the defendant in its seventeenth request to charge to the effect that the undisputed testimony in this case shows that Thornton was not killed while inspecting train No. 25. It is respectfully submitted that the undisputed testimony shows that he was not so killed and his Honor should have charged the request as submitted.

XVI. Because his Honor erred in not charging the jury in response to the eighteenth request that the only charge made in addition to the allegation that plaintiff's intestate was killed while inspecting train No. 25 is that while he was in the yard of the defendant for the purpose of inspecting train No. 25, a string of cars backed down upon him and the rear end of the said string of cars, or some part thereof, struck him and knocked him down and he was killed in that way through the negligence of the defendant, as alleged in the complaint and erred in not instructing the jury that unless the plaintiff has satisfied them by the preponderance of the testimony that Thornton was struck by the rear end of the said string of cars as it backed down through the yard, or some part thereof, and killed, there can be no recovery but the verdict in this case must be for the defendant, and erred further in instructing the jury in response to the said request that if Thornton was struck by train No. 25 and knocked under the string of cars, or that if he was struck by train No. 25 and killed through the negligence of the defendant, the plaintiff might recover.

It is submitted that the eighteenth request to charge correctly states the issues joined by the pleadings in this case, and it was erroneous in his Honor not to so charge the jury.

It is further submitted that his Honor erred in charging the jury that if plaintiff was struck by the train of cars on the main line and that if either of the string of cars or the train of cars on the main line caused his death through some act of negligence alleged in the complaint, then plaintiff would be entitled to recover. It is respectfully submitted that there is no allegation that plaintiff was struck by the train of cars on the main line, and absolutely no proof to such effect and to allow the jury to render a verdict on this ground was to allow it to find a verdict for the plaintiff on an issue not raised by the pleadings and on purely speculative grounds.

XVIII. Because his Honor erred in charging the jury as follows: "Now, gentlemen, every servant assumes the risk or risks, I will say, that are ordinarily incident to his employment. That does not include the risk of the negligence of a fellow servant, and never includes the risks of the negligence of the master in the performance of one of these nondelegable, nonassignable duties.

It is submitted that this charge can only be applicable in this case to the charge that the grounds were insufficiently lighted. It is further submitted that the undisputed testimony shows that plaintiff's intestate was a man of mature years and judgment and that he entered the employ of the defendant, knowing how the yards were lighted, and that he continued in the employ of the defendant, knowing that the yards were so lighted, and even though the defendant may have been negligent in this, yet he would assume all risks of injuries suffered thereby, especially if he fully appreciated the dangers thereof. That his Honor erred in not so charging the jury and erred in charging the jury to the contrary. The charge had the effect of denying to defendant the plea of assumption of risks as provided for by the Federal Employers' Liability Act.

XIX. Because his Honor erred in charging the jury in response to the twelfth request of the plaintiff: "That under

the act of Congress, on which this action is founded, an employee of a railway company does not assume the risk of injury which is brought about by the negligence of the railway company."

It is submitted that this request to charge in this case is applicable only to the allegations that the yards in this were insufficiently lighted. It is submitted that the undisputed testimony shows in this case that plaintiff's intestate entered the employ of the defendant, knowing that the yards were lighted by flambeaux and reflectors and in no other way, and that he continued in the employ of the defendant knowing this fact, and knowing that trains were operated in the yards by such flambeaux and lights, and the only reasonable inference to be drawn from the testimony is that he appreciated the dangers thereof and assumed the risks incident to the defendant's so lighting its yard, even though in this respect it might have been negligent.

It is further submitted that in any view of the case the charge was erroneous and his Honor should have left it to the jury under the facts of the case to say whether or not plaintiff's intestate assumed the risks of injuries arising from this manner of lighting the yard, even though the defendant may have been negligent in so doing.

The charge, it is submitted, had the effect of denying to defendant the plea of assumption of risks to which it was entitled under the Federal Employers' Liability Act.

*Mr. J. L. Glenn,* for appellant, cites: *Death not shown to be due to defendant's negligence:* 80 S. C. 469; 72 S. C. 398; 2 Labatt Master and Servant, sec. 837. *Assumption of risk:* 228 U. S. 700; 223 U. S. 1; 227 U. S. 59; 21 S. C. 531, 547; Pierce on Railroads 349; 72 S. C. 347; 61 S. C. 478; 80 S. C. 233; 86 S. C. 229; 87 S. C. 210; 55 S. E. 483; 136 S. W. 644. *Charge on measure of damages:* 228 U. S. 173; 227 U. S. 147, 59.

*Mr. Wm. P. Greene,* also for appellant, cites: *Assumption of risk:* 1 Labatt Master and Servant 274, 274a; 4 Thompson Negligence, secs. 4608, 4609, 4610; 147 U. S. 238; 122 U. S. 189; 111 N. Y. 550; 135 U. S. 554; 109 U. S. 487; 211 U. S. 459; 196 U. S. 51; 80 S. C. 238; 86 S. C. 235; 74 S. C. 425; 21 S. C. 574; 191 U. S. 64; 87 S. C. 213; 86 S. C. —.

*Mr. Wm. N. Graydon,* for respondent, cites: *Circumstantial evidence of defendant's negligence as proximate cause of decedent's death:* 191 U. S. 64. *Duty toward employees in railroad yards:* 67 S. C. 141. *Assumption of risks:* 223 U. S. 1; 32 Sup. Ct. 169; 156 L. Ed. 327; 65 S. C. 302; 60 S. C. 9; 75 S. C. 303; Const., art. IX, sec. 15; 75 S. C. 68. *Charge on damages unprejudicial and not called to the attention of trial Court:* 72 S. C. 361; 44 S. C. 346; 75 S. C. 469; 68 S. C. 38; 74 S. C. 102, 135; 80 S. C. 410; 95 S. C. 196; 61 S. C. 474.

April 27, 1914.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This was an action by plaintiff for the alleged wrongful killing of plaintiff's intestate, J. F. Thornton, by the defendant, for damages under the Federal Employers' Liability Act. The cause was tried before his Honor, Judge Prince, and a jury, at the April term of the Court, 1913, for Abbeville county, and resulted in a verdict in favor of the plaintiff for $8,500. After entry of judgment, the defendant appeals and by nineteen exceptions, some of which are subdivided, complains of error on the part of his Honor, but raises practically six questions: First. Error in allowing the plaintiff to amend her complaint. At the hearing of the case in this Court the defendant abandoned this exception. The second question raised by the exceptions alleges error in refusing to

direct a verdict for the defendant, moved for as set out in exceptions two, three, and four. It is so well settled that if there is any competent testimony to go to the jury, a nonsuit can not be granted or verdict directed, that quotation of authority is unnecessary. It has been further decided that the failure to prove one of several acts of negligence alleged does not furnish any ground for the direction of a verdict. *Cain* v. *Railroad Co.*, 74 S. C. 90, 54 S. E. 244. "Whenever there is any competent testimony it is the duty of the Judge to submit the case to the jury." *Buist Co.* v. *Mercantile Co.*, 73 S. C. 48, 52 S. E. 789.

There is no dispute that the plaintiff's intestate was killed by the train, that the yards were not lighted, and the evidence shows that there was no one on the back of the cars to giving warning, and there is no contention that any warning was given. The question, then, is: Was the plaintiff's intestate wrongfully or negligently killed by the defendant company, its agents, or servants? A case is usually made out by the positive testimony of eyewitnesses, to a transaction, who swear they saw the occurrence, and describe how it occurred. In this case we have no positive testimony as to how it occurred as no witness saw how it happened, and we must resort to the evidence of circumstances to arrive at a conclusion as to how it occurred, and say whether or not there was sufficient evidence in the case for his Honor to submit the question to the jury, as to whether or not deceased was killed negligently, by the defendant, in any of the particulars alleged and specified in the complaint. There was evidence in the case to show that when the deceased left the office, to inspect train No. 25 coming into the yards, at the same time a switch engine, with a number of cars back of it, was coming down the yard. On this switch engine train there was no light on the rear of the train, which was the front part as it was pushed down the yards, and no one was going ahead of it to warn the other employees in the yard. No one was on the front of the leading car as

required by the rules. There was no light on the end of the cars, and no warning was given of its approach. Train No. 25 was coming in on main line when deceased started to inspect it. The switch engine and cars were backing down track No. 1 at the same time train No. 25 was coming in the yard. Thornton was missed by White when he started to inspect train No. 25. His evidence is that there was a car, five or six cars from the caboose, that had some flat wheels and he stopped there to see about the wheels and also looked for Thornton, but did not see him as he was not on the other side of the car where he should have been. White and Thornton, the inspectors, were accustomed to walk down to the train as it came into the yard, watch the train as it passed by, so that by the time the train stopped they would be at the rear of the train when they would start the inspection. On this night White, one of the inspectors, got to the station but saw nothing of Thornton. After inspecting the train on both sides and still seeing nothing of Thornton he mentioned this to several persons and reported to them that Thornton was missing. White then inspected two trains before he heard that Thornton had been killed. When White first saw him after he was killed he was lying on track No. 1, south of the office, at the shops. It would appear from the evidence that he was killed on the north side of the office and dragged down track No. 1 to the south side. The cars that were cut were backed down track No. 1 for the purpose of attaching them to the rear end of train No. 25, which was to run from there to Atlanta as a double-header. The evidence further shows that the cap and torch of Thornton were found last, on north of office, the cap between track No. 1 and the main line, the torch about two yards off, some parts of his clothing were found in the middle of track No. 1, and there were signs that he had been dragged in the middle of track No. 1. The conductor of train No. 25 having heard of deceased's death examined his train at Elberton, Georgia; he found pieces of flesh on the ninth car from the

caboose, and on up for several cars towards the engine, thus creating an inference that the cut off cars when they were backed down track No. 1, might have run over and killed Thornton, and then dragged the body down the track towards the depot, and then dragged it back past the office to the south side of the office. A number of cars had run over him. Eighteen cars from the rear end had been shoved down the track. The signs of dragging were first seen about one hundred and fifty yards north of the office, and there were signs that he had been dragged down approximately one hundred yards north of the office. The evidence was that the yard was dark. It was in evidence that the boy, who found the body, could not tell what it was until he struck a match. There was evidence that another train, No. 22, came in after Thornton went out to inspect No. 25, and left before his body was discovered, and it is not clear what time this train No. 22 came in by the evidence. Engineer A. J. Andrews testifies that he is an engineer, lives at Abbeville, and his run is between Monroe and Atlanta; that he remembers the night Thornton was killed, and that No. 25 came in that night about twelve o'clock, and that it came in ahead of No. 22, and that No. 25 was the train that Thornton should have inspected, and he thinks that No. 22 came in about twelve-thirty; that No. 22 was due to leave at one-twenty and left on time. As has been said there is no eyewitnesses to the killing. There is nothing proven by eyewitnesses as to whether the negligence of defendant, or negligence of deceased, or his contributory negligence, caused the accident. The evidence shows deceased was in a normal condition of mind when he left to inspect the cars, and there is no suggestion that he committed suicide. In the absence of proof to the contrary the presumption is that he was attempting to carry out the duties of his employment, for which he had contracted, with due care and precaution, and while plaintiff cannot recover unless some of the specifications of negligence alleged are proven and it is shown in some way that

the defendant was derelict in its duty and this dereliction and negligence was the proximate cause of the injury, yet this can be established by facts and circumstances proven to establish these particular facts, and while one fact or circumstance proven may not be sufficient to establish a particular fact a number of facts proven, combined together, may make out a chain of circumstances that establish a fact, and this chain of circumstances in this case may establish on the part of the plaintiff the negligence in whole or in part alleged in her complaint as the basis for recovery of damages. As was said by Mr. Chief Justice Gary in *Smyly et al.* v. *Colleton Cypress Co.*, 95 S. C. 347, 78 S. E. 1026: "The plaintiffs relied upon a number of facts and circumstances, and while no particular one is sufficient to show that they were in possession of the lands at the time mentioned, nevertheless, when the facts are considered as a whole, they satisfy us that the nonsuit was properly refused." The rule is thus stated in *Railroad* v. *Partlaw,* 14 Rich. 237: "It may be that no one of the facts would of itself warrant the inference and yet when taken together they would produce belief, which is the object of all evidence."

In Greenleaf Evidence, section 51a, it is said: "It is not necessary that the evidence should bear directly upon the issue. It is admissible if it tends to prove the issue, or constitutes a link in the chain of proof although alone it might not justify a verdict in accordance with it."

In the case of *Choctaw, O. and G. R. Co.* v. *McDade,* 191 U. S. 64, 48 L. Ed. 96, 24 Sup. Ct. 24, the Court said: "There was evidence tending to show that McDade, a brakeman in the employ of the company, was killed on the night of August 19, 1900, while engaged in the discharge of his duties as head brakeman on a car on one of company's trains. McDade was at his post of duty, and when last seen, was transmitting a signal from the conductor to the engineer to run past the station of Goodwin, Arkansas, which the train was then approaching. The train passed Goodwin at

the rate of 20 to 25 miles an hour. At Goodwin there was a water tank, having attached thereto an iron spout, which, when not in use, hung at an angle from the side of the tank. Shortly after passing Goodwin, McDade was missed from the train, and, upon search being instituted, his lantern was found near the place on the car where he was at the time of giving the signal. His body was found at a distance of six hundred and seventy-five feet beyond the Goodwin tank. There was also testimony tending to show, from the location of the water spout, and the injuries upon the head and person of McDade, that he was killed as a result of being struck by the overhanging spout. The car, upon which McDade was engaged at the time of the injury, was a furniture car, wider and higher than the average car, and of such size as to make it highly dangerous to be on top of it at the place it was necessary to be when giving signals, in view of the fact that the spout cleared the car less than the height of a man above the car when in position to perform the duties required of him. There was no eyewitness to the exact manner of the injury to McDade, and it is urged that the Court below should have taken the case from the jury because of the lack of testimony upon this point. It was left to the jury under proper instructions to find out whether McDade came to his death in the manner stated in the declaration, and the Court distinctly charged that, unless satisfied of this, there could be no verdict against the railroad company. While the evidence was circumstantial, it was ample, in our opinion, to warrant the submission of this question to the jury under the instructions given."

So, we say in the case at bar, without further discussion of the testimony, after carefully studying the same, that the evidence of circumstances was ample for his Honor to submit the case to the jury, and these exceptions are overruled.

As to the third and fourth questions to be determined by the Court, which are the exceptions that complain of error on the part of the Judge in charging in regard to the married

daughter, and in charging as to what children could expect of a parent, and in charging as to increased earning capacity, we do not think, after carefully going over the Judge's charge as a whole, that the defendant was probably prejudiced thereby to such an extent as to warrant a reversal by this Court. He told them in the plainest terms he could use, and emphasized this by repetition, that the law "only intended to reimburse the family *dependent* upon the husband, whose death was caused by the wrongful act of another, you can allow such damages as those persons are reasonably expected to receive, and no more. You have a right in determining this to consider the ages of these children. You have a right to consider the fact that even though a child be of good physical capacity, and intellectual capacity, as long as he is a minor, it would have the right to reasonably be supported or maintained by his father. You would have the right to consider the fact that the daughter is married, if she is married. You would have the right to take into consideration the question as to whether she would have reasonably expected any contribution to her support from her father, if living. Would he probably have granted it? While you may allow the children to recover under this act who are beyond the age of twenty-one years, it must be by reason of some inability or incapacity of the children to earn a livelihood, because this act was intended to compensate people who are dependent relatives, who are dependent upon the deceased for support, and only to the extent to which they are dependent." In another part of his charge he charged: "All you can take into consideration is the loss of financial support; it makes no difference under this act what the earning capacity of the deceased, it matters not how much money he might have earned, it has nothing to do with this case. The question is: How much did he contribute to the support and maintenance of his wife and children? That is the question, and the burden rests upon the plaintiff to show how much he contributed, and the plaintiff can only

recover in this case, if she is entitled to recover at all, the amount she has shown by the greater weight of evidence that she and her children have been deprived of by the death of her husband." We do not think that his Honor's modification of the defendant's ninth request to charge complained of by defendant's thirteenth exception should be sustained as the jury could not have been misled by it, or the defendant prejudiced thereby, even if it were erroneous it was harmless, as there was nowhere any evidence at all that the deceased contributed one cent to his married daughter, or that she was in any way dependent upon him, and his Honor repeatedly explained in this case that the recovery could only be for his wife and children dependent upon him, to the amount only that he contributed to them, and we see no error on the part of his Honor in the particulars complained of. We see no error on the part of his Honor in modifying defendant's eighth request to charge, complained of in defendant's fourth exception, for the reason that in his charge he has informed the jury that it was immaterial to the question how much the deceased, the husband, earned. But "the question is, how much did he contribute to the support of his wife and children?" If he was in error it was harmless and not prejudicial taken in connection with his charge. But we say, in being requested to charge the eighth request of defendant, he had the right to add to it and charge as he did. He announced a sound proposition of law.

The fifth question to determine is that made by the exceptions, which allege error in charging the law as to assumption of risks. These exceptions cannot be sustained. To have held this would have been in conflict with Employers' Liability Act as construed by the Supreme Court of the United States in the case of *Mondou* v. *New York, New Haven and Hartford R. R. Co.,* 223 U. S. 1, 32 Sup. Ct. 169, 156, Lawyers' edition 327. His Honor's charge in reference to this was more favorable to the defendant than defendant was entitled to, and defendant cannot complain.

The sixth question to be determined is that made by exceptions fourteen, fifteen and sixteen, alleging error in refusing to charge defendant's seventeenth, eighteenth and nineteenth requests.

The fourteenth exception is overruled by what has been said herein as to assumption of risk.

The fifteenth exception is overruled for the reason it would have been a charge on the facts; and exception sixteen is overruled as his Honor had in his own language charged the law embodied therein before the requests was presented to him and in substance charged this request. After a thorough investigation and consideration of all the exceptions, the same are overruled and judgment affirmed.

Mr. JUSTICE GAGE did not sit in this case.

NOTE.—This case has been carried on writ of error to the United States Supreme Court.