15564

WATSON v. COXE BROTHERS LUMBER COMPANY

(26 S. E. (2d), 401)

126

December,
1942.

Messrs. *Dargan & Paulling,* of Darlington, S. C., Counsel for Appellant,

Messrs. *Mozingo & Watts,* of Darlington, S. C., Counsel for Respondents,

July 20, 1943.

Mr. Associate Justice Baker delivered the unanimous opinion of the Court:

This is an action by the respondent to recover from the appellant damages for personal injuries suffered by the respondent, an employee of the appellant, when the drive wheel of the appellant's engine became detached from the shaft and struck the respondent, inflicting injuries that necessitated the amputation of a leg immediately below the knee.

The respondent alleges and the appellant denies that the injuries "were caused by the careless, negligent, wilful, reckless and wanton acts of the defendant" as set forth in the complaint. The appellant also pleads assumption of risk, and an agreement by the respondent whereby the appellant was released from liability for the injuries complained of

A trial of the case resulted in a verdict in favor of the respondent in the sum of $1,700.00 actual damages.

Motion by appellant for a nonsuit, a directed verdict, and a new trial were duly made and heard and overruled.

The "Questions Involved" in this appeal as stated by the appellant, and in effect adopted by the respondent, are as follows:

"I. Did the Circuit Judge 'state the testimony' and charge the jury 'in respect to matters of fact' in violation of Article V, Section 26 of the State Constitution?

"II. Did the Circuit Judge err in his instruction to the jury regarding assumption of risk?'

"III. Did the Circuit Judge err in modifying the instruction requested by the appellant that 'Where an employee agrees either orally or in writing to release his employer from liability for injuries, the employee cannot recover damages for the injury without returning or offering to return the money or other consideration received, although he may claim that he was induced to agree to such release and accept the benefit thereof by fraud, deceit and misrepresentation on the part of the employer', by adding thereto the following comment: 'But that depends on whether or not the employer carries out his agreement. It is a two-sided agreement and if the employer does not carry out his agreement, the employee is not bound to make any return of consideration.'

"IV. Did the Circuit Judge err in refusing to instruct the jury, as requested by the appellant, that their verdict could not be predicated on conjecture?

"V. Was there evidence to support a reasonable inference that the respondent's injury was caused by negligence of the appellant, the risk of which was not known to or assumed by the respondent?"

We will discuss the questions *seriatim*.

Article 5, Section 26, of the Constitution, reads: "Judges shall not charge juries in respect to matters of fact, but shall declare the law."

At the request of the appellant, the trial Judge instructed the jury: "Evidence that the drive wheel left the shaft is not proof that it was defective or that the defendant was negligent," but added "That is a correct proposition of law, but if you believe these witnesses who testified that it was about to leave before, and attention was called to the defendant, then it is a question of fact for you to decide, whether or not it was negligent, and not a question of law for me to decide."

There was testimony in behalf of the respondent that about thirty minutes prior to the injury to him, this same drive wheel started to run off the shaft, and when this was called to the attention of J. J. Byrd, the sawyer, and the man who issued orders to the respondent "what to do", the mill was temporarily closed down, and Mr. Byrd took a four-by-six piece of lumber and drove the wheel back on; and told the respondent "to go back to work, it was all right, and he would see about it later." Respondent was still working at the same place when injured. His work required that his back be to the drive wheel. (The Byrd above referred to was not present at the trial of the case, his whereabouts being unknown.)

On behalf of appellant there was testimony that this drive wheel was fastened to the shaft "by one square key, a rule cut in the journal a half-inch, and in the hub of the wheel a half-inch, and there was a slightly tapered key that the more you drive it the tighter it would get. And in addition to the key, there were two big setscrews that went down on through the hub on the journal of the wheel"; that this wheel did not run off the drive shaft or start off the drive shaft that morning prior to the time it did run off and injured respondent; that it was unusual, if not unheard of, for a drive wheel to run off a shaft; that when the wheel ran off injuring respondent, neither the setscrews nor the key that held that drive wheel to the shaft were broken, but came out with the wheel, and were used in replacing the wheel on the shaft.

It was in the light of this testimony that the trial Judge made his charge, and to which the appellant excepts.

While there are numerous cases on this subject undertaking to interpret the precise intendment of this provision of the Constitution, we believe that the most succinct, and at the same time comprehensive and adequate statement of the governing law deducible from the various decisions of this Court on this constitutional provision is contained in the opinion of the Court written by

that able jurist, the late and lamented Chief Justice Bonham, in *Haynes v. Graham*, 192 S. C., 382, 390, 6 S. E. (2d), 903, 906, wherein he stated, after a review of several cases, the rule of law to be: "It is * * * the settled conclusion of this Court that the trial Judge may not intimate to the jury his opinion on any contested issue of fact in the case before him."

The appellant takes the position that the "added comment or instruction" to its request to charge was neither responsive nor pertinent thereto; that the effect of the added charge "was to point out and 'state' testimony upon which the respondent relied and to tell the jury to consider the same"; and that "the necessary import of the added instruction was favorable to the respondent and prejudicial to the appellants," and was precisely what the section of the Constitution above quoted was designed to prevent.

Immediately before making the "added" charge, the trial Judge had charged the jury:

"Proof of the injury to the plaintiff by the drive wheel of the defendant's engine which became detached from the shaft raises no presumption of negligence on the part of the defendant, and the plaintiff cannot recover unless he has satisfied you by the greater weight of the evidence that the drive wheel became detached from the shaft and struck the plaintiff in consequence of some negligent act or omission of the defendant, that is, because the defendant failed to use due care in the operation and maintenance of his machinery."

"Now, the man comes in and asks for damages for negligence of the defendant. If there was nothing to call the attention of the defendant to the defect in the machinery, if there was nothing to warn anyone as to the liability of an accident happening, the defendant would not be liable because if it appeared that it was such an unusual accident that nobody ever heard of it, the plaintiff can certainly not have assumed that risk, and the defendant would not be liable be-

cause, as I say, he is not an insurer. But if there was anything that happened to this piece of machinery before the accident that called to the attention of the operator, the sawyer or whoever was in charge of the danger,. then it would be a question for you to say whether or not it was negligently handled, whether or not the defendant did what it should have done, because until the defendant had some notice or some way of knowing or suspecting something, some weakness in the machinery, it would not be called upon to remedy it.

"But if there was something to call their attention to it, and they undertook to remedy it, and were negligent in remedying it or if they were negligent, then they would be liable for damages."

The "added" statement of the law was not out of accord with the law the trial Judge had just charged, but was complementary thereto and was in our opinion both responsive and pertinent to appellant's request in the light of the testimony in the case. The trial Judge was particular to state that it was entirely a question of fact for the jury to decide if under the testimony, the appellant was negligent, and that it was not a question of law for him to decide. It was of course the duty of the jury to consider all of the testimony adduced upon the trial by the respondent and the appellant, and it was the duty of the trial Judge to state adequately the law applicable to such testimony.

Considered in connection with the entire charge, and in its sequence, the jury could not have understood that the trial Judge was intimating his opinion on this contested fact.

As we understand appellant's exception to the charge of the trial Judge in reference to the defense of assumption of risk, it is not that the charge as given was incorrect,· but that it was not complete, and narrowed and restricted the doctrine of this plea or defense.

The trial Judge charged the law of assumption of risk practically as defined in the case of *Scott v. International Agr. Corp.*, 180 S. C., 1, 184 S. E., 133, and in addition charged appellant's request to charge relating to this defense. At the conclusion of his charge the trial Judge asked: "Is there anything further from the plaintiff?" Counsel for plaintiff replied in the negative, and before a similar question could be addressed to the defendant (appellant), counsel for the appellant stated, "Nothing further for the defendant."

If appellant desired a more complete charge of the law relating to its defense of assumption of risk, then was the time to make such desire known.

We now come to No. 3 of the "Questions Involved."

As a general proposition, where a party to a compromise desires to set aside or avoid a release duly entered into, and be remitted to his original rights, he must place the other party *in statu quo* by returning or tendering the return of whatever has been received by him under such compromise, if of any value. *Taylor v. Palmetto State Life Ins. Co.*, 196 S. C., 195, 12 S. E. (2d), 708. The question, of course, whether the rule applies in a given case depends upon the facts of such case. *King v. Pilot Life Ins. Co.*, 181 S. C., 238, 187 S. E., 369.

Here the respondent denies that any agreement of settlement was ever entered into. He denies that he ever agreed to release the appellant, and that any amount was paid him as the consideration for a release.

In his order refusing a new trial the trial Judge stated in reference to this issue:

"In connection with the second ground I might state that I do not think that the rule of law urged by defendant's attorneys applies in this case. One of the issues made by the pleadings and the testimony was whether or not plaintiff had, for consideration, released the defendant from liability. The plaintiff testified that he had not entered into a release,

had not offered to release defendant and in fact that no release was contemplated by the parties. The witnesses for the defendant sought to show that plaintiff had orally released defendant for certain consideration. Whether or not there was such a release was a question of fact and this issue was squarely presented to the jury which by its verdict found that there was no release and I am of the opinion that there was no error on this ground. Further, the defendant's testimony was to the effect that part of the consideration was the payment by defendant of plaintiff's medical bills. The evidence shows that the sum of One ($1.00) Dollar per month was deducted from plaintiff's wages by defendant, as well as the wages of other employees of the company, for medical attention such as in this instance. This was money which belonged to plaintiff and could not be even a part of the consideration for a release. Also the testimony of defendant is that it agreed to pay plaintiff certain weekly payments until he was able to return to work but that it did not make these payments as plaintiff was receiving money from the Unemployment Compensation Commission. This money could not enure to the benefit of defendant and could not be a part of the consideration for a release. Certainly plaintiff was not bound to return or tender return of these benefits or the doctor bills.

"It is urged by defendant's attorneys that under the authority of the case of *Levister v. Southern Railway Company,* 56 S. C., 508, 35 S. E., 207 [209], that it was entitled to the request to charge without the qualification which I added. I do not think the *Levister case* applies here. The following is quoted therefrom: 'We proceed, then, to the consideration of what we also regard as the only substantial question raised by the appeal, and that is whether a person who has sustained injuries by reason of the alleged negligence of a railroad company, and has afterwards, in consideration for the sum of money paid to him, executed a release of all claims against such company for damages sus-

tained by such injuries, can maintain an action for damages without first returning or offering to return the money so received, even though he alleges that such release was obtained by fraud. It seems that, upon the plainest principles of justice and fair dealing, there can be but one answer to this question, and that in the negative.'

"It will be observed that in the *Levister case* the consideration was paid and a release executed and delivered to defendant which was admitted by the plaintiff. Certainly under such conditions the plaintiff would have to return the consideration received even if the release was obtained by fraud. However, there was no release executed here, the consideration for the release not paid and all testimony touching on the release was denied by plaintiff. The defendant did not carry out the agreement which it claimed was made and there was nothing for plaintiff to rescind."

We approve the holding of the trial Judge thereabout, and add that he would have been justified in refusing to charge the request in the form presented. The requested charge was relevant only upon the jury first finding as a fact that the respondent had entered into an agreement with appellant, for valuable consideration, to release it from all liability by reason of its negligence resulting in his injury. If there was no agreement to release the appellant, then there was nothing to rescind, nor a consideration to return.

If the trial Judge made an erroneous statement of the law in his modification of appellant's request to charge by his added comment, such error is attributable to the effort of appellant to have charged an inapplicable rule of law unless as aforesaid, it was predicated upon a finding of the jury first that the respondent had for a valuable consideration entered into an agreement to release the appellant from liability, and that he was induced to enter into such agreement and had accepted the benefit thereof by fraud, deceit and misrepresentation of the appellant.

We have found no case from this State directly in point, and none has been cited, but from an annotation in 134 A. L. R., at page 91, it appears that a case decided in Arizona is on all-fours with the one under discussion. The case referred to is *City of Prescott v. Sumid,* 30 Ariz., 347, 247 P., 122, 125, which was an action for personal injuries in which defendant pleaded a settlement and plaintiff, in a reply, denied the making of any settlement. The Court, after approving the instructions given by the trial Judge as to the effect of the alleged settlement upon plaintiff's right to maintain the suit, plaintiff having made no return or offer to return the money received by him at the time the alleged settlement was made, said: "The law is clear. If A. has a claim against B., and agrees to settle such claim for a certain sum of money, which is paid to him, he cannot attempt to set aside the settlement for fraud or any other cause and sue on the original claim without first tendering back the money he has received in settlement. If, however, A. sues on the original claim and B. sets up an alleged settlement, in bar, if A. denies that there was any settlement, he is not obliged to return any sums which he admits having received, but maintains were paid for some other purpose than a settlement of his claim, as a condition precedent to maintaining his action. Under such circumstances the issue for the jury on the plea in bar is whether or not there was, as a matter of fact, a settlement. In this case such was the true issue on the plea in bar, and it having been submitted to the jury under proper instructions and their general verdict necessarily being a finding against the [defendant] on such issue, there is no merit in the point raised."

Two of appellant's requests to charge contained respectively this language: "The plaintiff must prove what caused the wheel to leave the shaft; you are not permitted to guess what might have caused it." And, "Before the plaintiff can recover, he must go further and prove

what caused the wheel to leave the shaft—not what might have caused it, but what did cause it."

The trial Judge refused to charge such portions of the requests to charge as worded, and rightly so. The theory upon which the case was tried was that the appellant had notice that its machinery was defective, and thirty minutes before the accident in which respondent was injured; and that appellant negligently failed to repair such defect, although leading respondent to believe that it had been safely repaired. The respondent had no duty to perform in connection with the machinery of the appellant. To have confined his right of recovery to proving the mechanical details which resulted in the wheel running off would have been to have excluded from the jury all grounds of liability of the appellant. Under the facts of this case the doctrine of *res ipsa loquitur*, which does not prevail in this State, did not enter into the issue if appellant had been negligent.

Negligence may be established by circumstantial evidence. The respondent had a right to assume that he had been furnished a reasonably safe place to work, and even though he had notice that this wheel had a short while before been discovered to be coming off the shaft, when his immediate superior undertook to repair it, and assured him that it was repaired, he had the right to rely upon this statement. Under no reasonable theory could it be said that the respondent assumed the risk of the wheel again coming off, especially when it is such an unusual occurrence.

All exceptions are overruled and the judgment affirmed.

MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES, and CIRCUIT JUDGES T. S. SEASE and E. H. HENDERSON, ACTING ASSOCIATE JUSTICES, concur.