Helen M. DENAUX, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Raymond L. DENAUX, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. Nos. 82–3029–8, 82–3028–8.

United States District Court,
D. South Carolina,
Charleston Division.

Sept. 30, 1983.

Mark C. Tanenbaum, Charleston, S.C., for plaintiffs.

Henry Dargan McMaster, U.S. Atty., Columbia, S.C., for defendant.

## ORDER

BLATT, District Judge.

This action arises as a result of an incident which occurred on November 24, 1981, at the Charleston Air Force Base Commissary when the plaintiff, Helen M. Denaux, slipped on some produce in the produce section of the commissary and, as a result thereof, fell and fractured her hip. She and her husband, the plaintiff, Raymond L. Denaux, both timely filed administrative claims for relief with the United States, which claims were, in due course, denied. The plaintiffs then timely brought these actions pursuant to the Federal Tort Claims Act.

### I. LIABILITY

On the day in question, plaintiffs were shopping at the Air Force Base Commissary where they had shopping privileges. While in the produce section of the store, the plaintiff, Mrs. Denaux, stepped on some crushed pole beans and slipped and fell. At the time this incident occurred, an employee of the store, Robert Tumulo, was unloading produce boxes loaded on a rolling "float" in the middle of the aisle of the produce section of the store, six feet from the produce counter. The beans on which the plaintiff slipped were within six inches of this "float." The plaintiff's husband testified that the beans were crushed, lying in a

liquid type substance on the floor, in an area approximately eight by ten inches. He further testified that Tumulo was unloading produce from this "float" in a very hurried fashion.

The deposition testimony of several employees of the defendant was also read into evidence. The manager of the produce department, Murray Cannady, and his employees, Tumulo and Jowers, testified that, under normal circumstances, when a customer dropped produce of any kind it was generally found just in front of the produce counter; that the usual procedure for cleaning the produce section required the employee loading the produce bins to wait until he had finished unloading his entire "float" before cleaning the area, despite the known fact that those employees often dropped produce as they unloaded the "float" and knew that produce on the floor created a hazard to customers who might slip thereon and fall. The plaintiffs also introduced into evidence the store safety manager's log of accidents which revealed four other incidents of slipping and falling in the store in the six months preceding this accident, three of such falls occurring in the produce section.

The defendant called as witnesses the employees noted above who corroborated the statements in their depositions. Testimony was also elicited from them and others indicating that they had no knowledge of Mrs. Denaux's fall until she was able to get to the checkout counter and report the same to a cashier; and that upon inspecting the area in question about twenty-five minutes after the report, nothing was found on the floor.

■ The law of the State of South Carolina governs the plaintiffs' substantive cause of action. 28 U.S.C. § 2671. *Bowen v. United States,* 570 F.2d 1311 (7th Cir. 1978); *United States v. Muniz,* 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). In *Anderson v. Winn-Dixie Greenville, Inc.,* 257 S.C. 75, 184 S.E.2d 77 (1971), the South Carolina Supreme Court clearly set forth the basis for a storekeeper's liability:

It is settled law that a merchant is not an insurer of the safety of a customer in his store. His duty is to exercise reasonable due care to keep his premises in reasonably safe condition. Proof that a dangerous condition of the floor existed because of the presence of some foreign matter thereon is insufficient, standing alone, to support a finding of negligence. Unless it is inferable from the evidence that the storekeeper was responsible for creating the hazard, knowledge of its existence, either actual or constructive, is essential to recovery against him.

*Anderson,* 184 S.E.2d at 77.

In *Hunter v. Dixie Home Stores,* 232 S.C. 139, 101 S.E.2d 262 (1957), the South Carolina Supreme Court held that a plaintiff might recover in a slip and fall case if there were sufficient evidence to show that the substance on the floor was placed there by an act of the defendant.

The burden in this case was upon the respondent to show that the beans were on the floor by an act of the appellant or that they had been there for such a time as to charge the appellant with notice thereof.

*Hunter,* 101 S.E.2d at 265.

The plaintiffs have relied upon circumstantial evidence to prove their cases of liability. They argue that three separate bases for liability of the defendant to the plaintiffs are reasonably and properly inferable from the circumstantial evidence herein.

First, the plaintiffs argue that there is a reasonably proper inference to be drawn that the beans upon which Mrs. Denaux fell were dropped by the employee, Tumulo. The plaintiffs point to the following: the location of the beans some six feet from the counter, within six inches of the "float" from which the employee, Tumulo, was hurriedly unloading produce; the testimony of the produce manager and Jowers that pole beans were in stock in the store; the testimony that when a customer dropped produce it was found directly in front of the counter; the testimony that the employees dropped produce when unloading the

"float" and carrying the produce to the bins; and that employees loading the produce bins do not clean the floor of the fallen produce until the entire "float" has been unloaded. Thus, the plaintiffs take the position that there is sufficient circumstantial evidence from which the trier of fact can find a reasonably proper inference that the defendant's employee, Tumulo, dropped the beans here involved on the floor.

Secondly, the plaintiffs contend that there is sufficient circumstantial evidence from which a reasonably proper inference can be drawn that the defendant knew or should have known presence of the beans on the floor. The plaintiffs point to the following in support of this theory: the location of the beans six feet from the counter and six inches from the float Tumulo was unloading; the fact that the beans had been stepped upon by persons in that area for a sufficient period of time to squeeze enough liquid substance therefrom to cover an eight by ten inch area; and the defendant's practice to remove fallen produce only after the entire "float" had been unloaded. Additionally, the plaintiffs argue that if the defendant's employee, Tumulo, dropped the beans, he knew or should have known of their presence.

Thirdly, plaintiffs argue that the defendant created the hazardous condition that caused Mrs. Denaux's injuries by its method of carrying on its business. Plaintiffs argue that the self-service loose mode used by defendants for the sale of produce, combined with defendant's practice of unloading produce from a float six feet from the counter to which it is carried, knowing that its employees often dropped produce while unloading, and waiting until the entire float was unloaded before cleaning the area, caused this hazardous condition. *Pimentel v. Roundup Co.*, 100 Wash.2d 39, 666 P.2d 888 (1983).

■ The plaintiffs' reliance upon circumstantial evidence to prove negligence is sufficient under South Carolina law, as pointed out in *Barnwell v. Elliott*, 225 S.C. 62, 80 S.E.2d 748 (1954):

It is elementary that negligence may be established by circumstantial evidence. *Thornton v. Seaboard Air Line Ry. Co.*, 98 S.C. 348, 82 S.E. 433; *Watson v. Coxe Bros. Lumber Co.*, 203 S.C. 125, 26 S.E.2d 401. And in considering the sufficiency of such evidence, "the facts and circumstances shown should be reckoned with in the light of ordinary experience and such conclusions deduced therefrom as common sense dictates." *Leek v. New South Express Lines*, 192 S.C. 527, 7 S.E.2d 459, 462. The fact that the doctrine of *res ipsa loquitur* is not applied in this jurisdiction does not mean that negligence may not be established by circumstantial evidence as well as direct evidence. *Eickhoff v. Beard-Laney, Inc.*, 199 S.C. 500, 20 S.E.2d 153, 141 A.L.R. 1010. It is also important to bear in mind that the fact that an injury may have been caused in one of two or more ways does not preclude recovery, "if the facts and circumstances in evidence warrant a reasonable inference that it was caused in any way alleged in the complaint for which the master would be liable." *Steele v. Atlantic Coast Line R. Co.*, 103 S.C. 102, 87 S.E. 639, 643.

■ While South Carolina law is relied upon to substantively establish the plaintiffs' cause of action, the standard as to the quantum of proof necessary to create a question of fact by circumstantial evidence is governed by Federal law. This standard has been set forth clearly by then Chief Judge Haynsworth in his opinion for the Fourth Circuit Court of Appeals in *Wratchford v. S.J. Groves & Son Co.*, 405 F.2d 1061 (4th Cir.1969). In rejecting a claim that the plaintiff had failed to offer sufficient evidence and that the defendant was entitled to a non-suit if two equally strong conflicting inferences could be drawn from the circumstantial evidence produced, the Court held:

The federal standard may once have been the same as that which the District Court understood was applicable in the state courts of Maryland, but it no longer is. In *Ford Motor Co. v. McDavid*, 4 Cir., 259

F.2d 261, 266, we expressed it in the following language:

> The old notion that a jury should not be allowed to draw any inference from circumstantial evidence, if the one is as probable as the other, has fallen into discard and has been replaced by the more sensible rule that it is the province of the jury to resolve conflicting inferences from circumstantial evidence. Permissible inferences may still be within the range of reasonable probability, however, and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture.

*Wratchford,* 405 F.2d at 1066. See also *Lovelace v. Sherwin-Williams Co.,* 681 F.2d 230 (4th Cir.1982). Of course, the plaintiff must meet his burden of persuading the finder of fact by a preponderance of the evidence. *Wratchford,* 405 F.2d at 1066.

■ Based upon the foregoing review of the evidence in this case, the court makes the following findings of fact which the plaintiffs have proven by the preponderance of the evidence:

ONE: That the most reasonable and probable inference from the evidence is that the beans upon which Mrs. Denaux slipped and fell were located on the floor due to the conduct of the employees and agents of the defendant, acting in the course and scope of their employment.

TWO: That the spot on the floor where Mrs. Denaux fell was eight by ten inches in size with a small number of beans in it; that the juice from the beans was spread over this area; that this spot was located in an area where the defendant's employee was working; that the defendant's employee should have seen this spot and cleaned it immediately, rather than following the defendant's normal procedure of waiting to clean the area until all produce had been unloaded, since the defendant was aware of the danger for a shopper created by produce on the floor.

■ Based upon the foregoing, the court reaches the following conclusions of law:

ONE: That the defendant was negligent in allowing the beans upon which the plaintiff stepped to accumulate on the floor and this negligence proximately caused injuries to the plaintiffs.

TWO: That the defendant was negligent in failing to remove the beans in question from the floor when it knew, or should have known, such beans were on the floor, and this negligence proximately caused injuries to the plaintiffs.

THREE: That the defendant was negligent in that its method of doing business created a dangerous and hazardous condition for shoppers in its store because it offered produce for sale in a self-service loose-item mode, unloading this produce from a "float" located six feet from the counter and had its employees wait until the unloading of the "float" was completed to clean the floor, knowing that produce being unloaded in such fashion often dropped on the floor, and in that state, was dangerous to customers, and such negligence was a proximate cause of the injuries to the plaintiff.

## II. DAMAGES

Having concluded the liability issue in favor of the plaintiffs, the court now addresses the issue of damages.

After Mrs. Denaux fell, she was able to proceed to the checkout counter, aided by her husband and using their shopping cart. She was then helped to her car by an employee of the store and driven by her husband to the Air Force Dispensary, where she was examined by medical personnel, x-rays taken and it was concluded that she had a fracture of her right hip. Mrs. Denaux was transported by ambulance to Roper Hospital and met there by her family physician and John Arthur Siegling, M.D., an orthopaedic surgeon. Dr. Siegling testified that he confirmed the fracture of the right hip, admitted Mrs. Denaux to Roper Hospital that day, and the next day performed surgery, under general anesthesia, placing four Moore pins in the head of the

femur. Mrs. Denaux remained in the hospital until December 12, 1981, when she was discharged and returned home.

Upon arrival at her home, Mrs. Denaux was confined to bed. Because her home is a tri-level home with her bedroom at the top of two separate flights of stairs, and because she was unable to negotiate those stairs, Mr. Denaux outfitted the ground level den as a bedroom for Mrs. Denaux. This room had no lavatory nor any bath or toilet facilities; Mrs. Denaux had to cross the garage to use a small lavatory. Mrs. Denaux slept in this room until October 1, 1982, in a single bed purchased by her husband. Mr. Denaux slept in this room on a fold out sofa during this time. During this period, Mr. Denaux was Mrs. Denaux's constant companion and attendant; not only did he cook all of her meals, but he provided her with nursing care as well. He took over all of the household duties that she normally performed. In addition, he bathed her, washed her hair, and accompanied her to the toilet, since she was unable to do any of these things alone from November 24, 1981, until October 1, 1982. Mr. Denaux testified that from November 24, 1981, to October 1, 1982, he spent an average of four hours per day performing household services such as cooking, cleaning and vacuuming, and spent four hours per day nursing, providing services for Mrs. Denaux such as bathing her, accompanying her to the lavatory, and caring for her in general. This period did not include the two occasions when Mrs. Denaux was actually confined to the hospital.

On August 23, 1982, Mrs. Denaux was readmitted to Roper Hospital for removal of the pins from her hip. This surgery was performed under general anesthesia and she was discharged on September 5, 1982, again to the ground level den with her husband. Finally, on October 1, 1982, Mr. and Mrs. Denaux were able to return to their bedroom with the aid of two elevator type chair lifts which Mr. Denaux had installed in their home. Since October 1, 1982, Mrs. Denaux has not required any nursing services; however, because she has been unable to perform many of her usual household

tasks, Mr. Denaux has been required to spend two hours per day performing household services.

Dr. Siegling testified that Mrs. Denaux sustained an extremely painful injury that seriously diminished the quality of her life. He stated that her injury had been complicated by avascular necrosis, or death of some parts of the fractured area of the bone, that she was disabled and unable to participate in most home activities, that there was arthritis present as a result of the injury, and that her condition would not improve. Dr. Siegling further testified that Mrs. Denaux may need a prosthesis placed in her hip in the future, and that the cost of that procedure, including hospitalization, surgeons' fees, anesthesia fees, physical therapy and tests, would be approximately Ten Thousand and $^{no}/_{100}$ ($10,000.00) Dollars.

Mr. and Mrs. Denaux testified as to the injuries and damages they each sustained. Mrs. Denaux was born on November 24, 1918, this accident occurring on her sixty-third birthday; Mr. Denaux was born on March 26, 1913; and they were married on May 19, 1937. Mr. and Mrs. Denaux have one daughter who is married and has children. Mrs. Denaux had been a housewife virtually all of her married life. Mr. Denaux was retired from the United States Army and Army Reserve as a Colonel and he was retired also from civil service. Prior to this accident, Mr. and Mrs. Denaux enjoyed many recreational activities together. They owned a house at Folly Beach which they visited often; they fished together frequently. They took many trips to the western part of the United States and Canada. Since the accident, they have been unable to fish; they have been unable to visit their beach home; and they have been unable to travel as they had before the accident. Mr. and Mrs. Denaux testified that Mrs. Denaux's hip was very painful; that she was confined to her bed, to a wheelchair, and to the use of a four-legged walker from November 24, 1981, until October 1, 1982, and that since October 1, 1982, she has been forced to walk with a cane at all times. They stated that, although she owned her

own automobile, Mrs. Denaux had stopped driving since the accident due to the pain in her right hip and her fear of being hit, and that she had become totally dependent upon her husband and others for transportation; that she had difficulty sleeping as she normally slept on her side prior to the accident, but could not do so now; that she had been forced to give up her gardening and yard work, which activities she enjoyed very much. Additionally, they testified that Mrs. Denaux is unable to kneel in church, which fact made her feel conspicuous, and they testified in detail about Mrs. Denaux's use of a wheelchair, a four-legged walker, and a cane.

Testifying also for the plaintiffs were Dyana Lowndes-Rosen, M.D., a psychiatrist, and William H. Snyder, Ph.D., a clinical psychologist. These doctors had seen Mr. and Mrs. Denaux together for purposes of evaluation. Dr. Lowndes-Rosen and Dr. Snyder testified that Mrs. Denaux was suffering from post-traumatic stress disorder, chronic, a recognized psychiatric disorder, and that this disorder was caused by injuries sustained on November 24, 1981. In addition, Dr. Lowndes-Rosen found Mrs. Denaux to be suffering from chronic pain syndrome. Dr. Lowndes-Rosen stated that Mrs. Denaux was unable to walk freely, was in constant pain even while sleeping, was unable to pursue her former hobbies, was embarrassed due to her condition, felt as if she was a burden on her husband, and had suicidal ideation. Dr. Lowndes-Rosen further testified that in all likelihood Mrs. Denaux's condition would probably progressively worsen and would certainly not improve. Dr. Lowndes-Rosen further found Mrs. Denaux to be suffering the consequences of a "recognized stressor," this being the incident of November 24, 1981. As such, Dr. Lowndes-Rosen stated that Mrs. Denaux re-experienced the trauma regularly through recurrent painful, intensive recollections, and that other symptoms were also present, namely, a markedly decreased interest in the outside world, in that Mrs. Denaux felt detached and alienated from the world, feeling that she "stands out like a sore thumb;" that Mrs. Denaux was chronically hyperalert and suffered from a sleep disturbance; that she suffered guilt feelings in that she saw herself as a burden to her husband, as he had, by necessity, limited his activities; and that she had substantial difficulty with concentration and avoided many activities that reminded her of the original trauma.

Dr. Snyder described Mrs. Denaux's pain as being "unrelenting," "gruelling," "day after day"; he said that Mrs. Denaux was extremely depressed, that she was unable to take analgesics due to problems these caused with constipation, and that she would be depressed for the rest of her life due to this pain. He testified that this condition resulted from the injuries sustained on November 24, 1981.

Dr. Lowndes-Rosen also testified to the effect this accident had on Mr. Denaux. She stated that while both Mr. and Mrs. Denaux had been independent prior to Mrs. Denaux's fall, they had a "symbiotic" relationship now and that Mrs. Denaux was totally dependent on Mr. Denaux. Because of Mrs. Denaux's condition, and Mr. Denaux's love for her, Mr. Denaux felt as if he must be with her constantly.

As to the economic losses sustained by the plaintiffs, Mr. Denaux testified that he had expended Fifteen Thousand Nine Hundred Twenty-five and $^{23}/_{100}$ ($15,925.23) Dollars for medical care and items made necessary for the couple's home as a direct result of the November 24, 1981, injury.

Oliver Wood, Ph.D., testified in detail as to certain financial losses suffered by the plaintiffs. After making the necessary discount for present value, and assuming the testimony of the plaintiffs to be true as to their normal pre-accident and post-accident routine, he testified that the plaintiff, Mrs. Denaux, suffered a pre-trial loss of Nine Thousand Nine Hundred Forty and $^{no}/_{100}$ ($9,940.00) Dollars for household and nursing services, and that she would suffer a post-trial loss of an additional Twenty-Eight Thousand Five Hundred Eight and $^{no}/_{100}$ ($28,508.00) Dollars for loss of household services should her condition not

deteriorate further. Dr. Wood testified as to certain financial losses that would be sustained by this plaintiff should she need nursing care in the future; however, Dr. Siegling did not state with sufficient certainty that such nursing care would be necessary.

Based upon the foregoing, the court enters the following findings of facts and conclusions of law regarding damages.

ONE: That the plaintiff, Raymond L. Denaux is entitled to recover the sum of Fifteen Thousand Nine Hundred Twenty-Five and $^{23}/_{100}$ ($15,925.23) Dollars for actual expenses incurred for medical care and the purchase of items necessary for Mrs. Denaux to be able to live at home, said expenses directly resulting from the fall on November 24, 1981.

TWO: That the plaintiff, Helen M. Denaux, is entitled to recover the sum of Nine Thousand Nine Hundred Forty and $^{no}/_{100}$ ($9,940.00) Dollars for pre-trial economic losses due to her inability to perform household services, and for nursing care. Additionally, Mrs. Denaux is entitled to recover the sum of Twenty-Eight Thousand Five Hundred Eight and $^{no}/_{100}$ ($28,508.00) Dollars for her inability to perform household services for the remainder of her life expectancy as determined by the South Carolina Mortuary Table. This sum has been reduced to its present cash value, using a discount factor of five per cent, which factor the court finds reasonable. Mrs. Denaux is entitled to recover those sums even though her husband gratuitously has performed these services in the past, and anticipates being able to perform them during the remainder of his life expectancy, which is eight years less than her life expectancy. The fact that such services have been gratuitously performed by a family member does not bar the plaintiff's recovery. 22 Am.Jur.(2d) *Damages*, § 207. *Sweeney v. Car/Puter International Corp.,* 521 F.Supp. 276 (D.S.C.1981); *Hysell v. Iowa Public Service Co.,* 559 F.2d 468 (8th Cir.1977); Annot., 90 A.L.R.2d 1323, 1330. It must be borne in mind that these elements of damages for inability to perform household

services and for nursing care awarded to the plaintiff, Helen M. Denaux, are distinct and separate from those elements of damages contained in the cause of action for loss of consortium that has been brought by Mr. Denaux, and such damages are expressly excluded from his claim.

THREE: I find that the plaintiff, Helen M. Denaux, who had a life expectancy of seventeen (17) years at the time of trial, is entitled to recover the sum of Two Hundred Thousand and $^{no}/_{100}$ ($200,000.00) Dollars for pain and suffering from the date of her injury to the date of her expected death. In making this determination, the court is mindful of the fact that Mrs. Denaux was bedridden for one year, and underwent two operative procedures, as well as the uncontroverted testimony of Dr. Snyder in which he described Mrs. Denaux's pain as "unrelenting," "gruelling," "day after day." In addition thereto, Dr. Lowndes-Rosen's testimony concerning Mrs. Denaux's psychiatric condition and its effect on her life is uncontroverted and overwhelming. It must be borne in mind that damages for mental anguish and pain and suffering are unliquidated and indeterminate in character under South Carolina law and the assessment thereof must rest in the sound discretion of the finder of fact, *Harper v. Bolton,* 239 S.C. 541, 124 S.E.2d 54, and there is no fixed rule for determining the amount of damages to be awarded for mental anguish and pain and suffering. *Edwards v. Lawton,* 244 S.C. 276, 136 S.E.2d 708.

FOUR: The court finds that the plaintiff, Helen M. Denaux, has lost the ability to enjoy the normal activities of life she had undertaken prior to her injury, and the court feels that an award for that loss should be separately stated. *Sweeney, supra; Steeves v. United States,* 294 F.Supp. 446 (D.S.C.1968); *Brown v. Niles,* Nos. 82–42, 82–43 (D.S.C. Sept. 23, 1982). The court is mindful of the many activities, recreational and otherwise, that Mrs. Denaux formerly enjoyed, but which she can no longer undertake, and based thereon, the court finds that the plaintiff is entitled to the sum of One Hundred Thousand and $^{no}/_{100}$

($100,000.00) Dollars as damages for loss of enjoyment of life from the date of her injury to the date of her expected death.

FIVE: The plaintiff, Raymond M. Denaux, who had a life expectancy of twelve (12) years at the time of his wife's injury, is entitled to recover for his loss of consortium. As was recognized in *Cook v. Atlantic Coast Line RR Co.*, 196 S.C. 230, 13 S.E.2d 1, 6–7:

> The companionship and society of a wife are not articles of commerce. They cannot be weighed or measured. They are not bought and sold, and no expert is competent to testify to their value. The consideration upon which they are bestowed is not pecuniary. Yet the husband is entitled to compensation in money for their loss, and the amount of that compensation is to be determined * * *, not from evidence of value, but from * * observation, experience, and knowledge, conscientiously applied to the facts and circumstances of the case. So, also, in relation to the services of the wife. The wife does not occupy the position of a servant, and her services to her husband are not those of a servant. She makes his home cheerful and inviting, and ministers to his happiness in a multitude of ways outside of the drudgery of household labor. All the work of the house may be done by hired employees, and her service still give character to the home. They are not repeated in regular order from day to day. They have their source in the thoughtfulness of the wife, and her regard for her husband; and no witness is qualified to define them, or say what they are worth. So that their value must also be estimated * * * *

The claim for loss of consortium here is most significant. Mr. and Mrs. Denaux had entered the golden years of their lives when she was injured, and having seen them and listened to their testimony, it was so evident to the court that theirs was an almost perfect relationship in their love and devotion to each other, and in the companionship that they shared. They fished, traveled, and worked together in and around their home. Substantially all of life's pleasures which this couple enjoyed have been destroyed by the negligence of the defendant and has, in effect, made Mr. Denaux into Mrs. Denaux's servant, creating, in the words of Dr. Lowndes-Rosen, a guilt-ridden, symbiotic relationship wherein the plaintiff, Raymond L. Denaux, is afraid to ever leave his wife alone. I find the plaintiff, Raymond L. Denaux, is entitled to the sum of Seventy-Five Thousand and no/100 ($75,000.00) Dollars for his loss of consortium.

Based on the foregoing, it is

ORDERED, that judgment be entered on behalf of the plaintiff, Helen M. Denaux, in the total amount of Three Hundred Thirty-Eight Thousand, Four Hundred Forty-Eight and no/100 ($338,448.00) Dollars, as set forth hereinabove; and

IT IS FURTHER ORDERED, that judgment be entered on behalf of the plaintiff, Raymond L. Denaux, in the amount of Ninety Thousand Nine Hundred Twenty-Five and 23/100 ($90,925.23) Dollars, as set forth hereinabove.

AND IT IS SO ORDERED.